**THOMPSON v. LAWSON et al.**

No. 14484.

United States Court of Appeals
Fifth Circuit.

June 30, 1953.

J. A. McClure, Jr., McClure & Turville, St. Petersburg, Fla., for appellant.

Arthur A. Simpson, Herbert S. Phillips, U. S. Atty., Paul Lake and Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal presents the single question whether, on the facts [1] found by the Deputy Commissioner, Commissioner and Judge were right in rejecting plaintiff's claim that, within the meaning of Section 902(16),[2] Title 33 U.S.C., she was the "widow" of Otis Thompson, deceased, and entitled to recover compensation as such.

Here, appealing from the judgment approving the finding of the commissioner and dismissing her claim, plaintiff, admitting that the cases [3] in this court, cited by the district judge in support of his judgment, do support it, assails those cases as wrongly decided.

Citing as in conflict therewith two earlier decided cases, one from the Third [4] and the other from the Second Circuit,[5] and a later one from the Ninth Circuit,[6] she insists that we should re-examine our decisions and, on the authority of the cited cases, disapprove and overrule them.

We cannot agree. We find nothing in the reasoning of the cited cases to recommend them to our approval. On the con-

1. These as material here are: that the claimant Julia Thompson and the deceased were married on Jan. 15, 1921; that Julia Thompson and Otis Thompson thereafter had two children, William Gordon Thompson and Lucille Thompson, and lived together as man and wife until approximately the first Monday in November, 1925, when Otis Thompson deserted Julia Thompson; that Otis Thompson and Julia Thompson never lived together as man and wife thereafter; that Otis Thompson never contributed to the support of Julia Thompson or their children after that date; that Otis Thompson and Julia Thompson were never divorced; that on June 28, 1940, Julia Thompson was married to Jimmy Lewis Fuller at Miami, Florida; and ever since then she has been known as Julia Fuller; that Jimmy Lewis Fuller divorced Julia Fuller (Thompson) in August, 1949, in Ohio, charging desertion; that Julia Thompson moved to St. Petersburg, Florida in 1941 and has lived there ever since under the name of Julia Fuller; that about Aug., 1926, Otis Thompson and Sallie Williams began living together and on Aug. 17, 1929, they were married at Tampa; that at the time of making application for the license for this marriage, Otis Thompson stated that he had been divorced; that this was a false statement in that Otis Thompson and Julia Thompson had never been divorced; and that Sallie Williams knew that they had not, and the purported marriage was illegal and void; that in 1949 Sallie Thompson went to Newark, New Jersey to visit a relative and while there secured a job; that since that time she has continued to work and to reside in Newark, New Jersey and was residing there at the time of Otis Thompson's injury and death; that during the period from 1949 until the death of Otis Thompson on June 15, 1951, Sallie Thompson returned to Tampa on two or three occasions, stayed at Tampa approximately one month and returned to Newark; that during Sallie Thompson's absence from Tampa, and at a time approximately three weeks before his injury on June 7, 1951, Otis Thompson called upon Julia Thompson at the home of their daughter Lucille; that during the time of that visit Otis Thompson asked Julia Thompson if she would "take him back" and Julia Thompson refused; that Julia Thompson did not have any intentions of ever again living with Otis Thompson and resuming the relationship of husband and wife; on the basis of these facts the commissioner found: (1) that at the time of his injury and death the claimant, Julia Thompson was the lawful wife of Otis Thompson; (2) that from Nov., 1925, until June, 1940, she was living apart from him by reason of his desertion; (3) that she was not living apart from him at the time of his death for justifiable cause or by reason of his desertion; (4) that at the time of his death she was not dependent for support upon him; and (5) that she was not entitled to receive compensation for his death.

2. "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time."

3. Ryan Stevedoring Co. v. Henderson, 5 Cir., 138 F.2d 348; American Mut. Liability Ins. Co. v. Henderson, 5 Cir., 141 F.2d 813.

4. Travelers Ins. Co. v. Norton, D.C., 34 F.Supp. 740.

5. Associated Operating Co. v. Lowe, D.C., 52 F.Supp. 550; Affirmed Per Curiam, 2 Cir., 138 F.2d 916.

6. Moore Dry Dock Co. v. Pillsbury, 9 Cir., 169 F.2d 988.

trary, we think they proceed upon a completely false premise. This is that the rejection of the wife's claim is based upon the view that, at the time of the death of the husband, the wife was living an immoral life and must be punished therefor. While this fact points up the anomaly of her claim in instances where the new relation is knowingly meretricious, this is not at all the basic reason for its rejection. The reason is to be found in the precise terms of the statute which requires for recovery that "at the time of his death", the woman claiming as "widow" must either be *living with* or dependent for support upon her husband, or, *if she is living apart from him* that she is doing so *for justifiable cause or by reason of his desertion at that time.*

Our decisions therefore proceed upon the conclusion that living in the relation of wife to another man and having and raising children by and for him at the time of her husband's death cannot be said to be justifiable cause for the wife's not living with him. Neither, if causation is to mean anything, can it be said that a woman is, at the time of her husband's death, living apart from him *because of his desertion,* when though originally deserted by her husband without fault on her part, she has made a new life for herself by living with another man as his wife.

The fact made so much of in the Moore Dry Dock case, supra, that the deserted wife, in the good faith belief that her first marriage had ended in divorce, had entered into a new ceremonial marriage, while relevant on the question of her moral blameworthiness, would not show or tend to show that she was the statutory widow of the deceased. On the contrary, by showing that she had set up a new marital establishment on a permanent basis which the death of her first husband had legalized, it would show even more clearly than a meretricious relation would that she was not the widow of the deceased but another man's wife.

We are in no doubt that our cases were correctly decided and should not be departed from. But if we are incorrect in the view that they were well decided on their facts, the judgment should still be affirmed, since it is undisputed and found that three weeks before his death the deceased had endeavored to have the plaintiff return to him and she had refused to do so.

The judgment was right. It is affirmed.