**LAVINO SHIPPING COMPANY**

v.

**P. J. DONOVAN, Deputy Commissioner of United States Employees' Compensation Commission, Defendant, and Anna T. Lou Smith, Intervening Defendant.**

Civ. A. No. 24611.

United States District Court
E. D. Pennsylvania.

Oct. 20, 1958.

George D. Sheehan, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Daniel J. DiGiacomo, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

Joseph N. Bongiovanni, Jr., Philadelphia, Pa., for intervening defendant.

CLARY, District Judge.

This is a proceeding under 33 U.S.C.A. § 921(b) for review of an award of death benefits under the Longshoremen's and Harbor Workers' Compensation Act. Provision for such benefits is made in 33 U.S.C.A. § 909(b) for the "surviving wife" of a deceased employee. It seems established, and all parties involved agree, that to qualify as a "surviving wife" one must fall within the definition of "widow" contained in 33 U.S.C.A. § 902(16). See, e. g., Weeks v. Behrend, 1943, 77 U.S.App.D.C. 341, 135 F.2d 258, 259; Williams v. Lawson, 5 Cir., 1929, 35 F.2d 346. The statutory definition reads:

> "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time."

The Deputy Commissioner found that the deceased employee deserted the claimant in 1938; and that she thereafter lived apart from him for justifiable cause and by reason of his desertion [1] until his death. The plaintiff herein then in-

1. In his findings the Commissioner made no reference to living apart by reason of desertion. However, the parties in their briefs proceed on the assumption that such was the intended meaning of the findings. In view of the finding of desertion in the Commissioner's order, this seems warranted.

stituted review proceedings; and now moves, without objection by the other parties to its appropriateness, for summary judgment on the ground that the findings are unsupported by the evidence. After considering the transcript of testimony before the Commissioner, the briefs filed by the parties and oral argument heard, the Court is of the opinion that plaintiff's motion should be granted.

Before proceeding further, disposition must be made of a preliminary issue. The Commissioner argues that the issue of "living apart" was not properly raised at the hearing, and cannot, therefore, be advanced on review. It is true that the parties agreed at the commencement of the hearing that the only issue was one of "dependency". However, no testimony directly relevant to "dependency" was thereafter adduced. Indeed, the entire hearing consisted of an inquiry into the alleged desertion and subsequent "living apart"; and it is to this precise issue that the Commissioner's findings relate. Thus, the question is properly before the Court and, since it is the only issue raised on plaintiff's motion, discussion will be restricted to it.

The relevant testimony appearing in the transcript,[2] upon which the Commissioner places exclusive reliance to support the award,[3] may be summarized as follows: [4]

Claimant and the deceased employee (hereinafter referred to as decedent) were married in Philadelphia in 1928; and except for an eighteen-month period during which claimant lived in Detroit with her parents, they lived together as husband and wife until 1938 when decedent left the claimant. Claimant had given him no cause to leave and had not agreed to his departure. Although she said that he left "because of Nancy", she did not reveal the basis of this statement, and it is clear that it is supported by nothing decedent had said to her. The Commissioner noted for the record that one Nancy Smith had filed a "notice of election to sue a third party" under 33 U.S.C.A. § 933(a) on behalf of herself and her minor daughter Joyce Smith in which she apparently alleged that she was the "surviving wife" and Joyce the daughter of the decedent.[5] Both parties were represented at the hearing. At an indeterminate date after his departure, claimant sought out decedent and asked him to return, but he refused to speak to her. Approximately one year after the separation claimant saw decedent again for the first time. They began dating twice a month and continued to do so until January 1955 when claimant last saw decedent. Throughout this period of "dating" they occasionally spent nights together as man and wife; and decedent at times gave claimant money ranging in amount from $3 to $10. On their meetings they sometimes spoke of reconciliation; and decedent asked claimant to return to him a number of times, the dates of which she could not remember, but she testified specifically of one such request which occurred in 1952. Claimant, however, refused. The record is barren of any explanation for the refusal other than the following testimony of claimant given on cross-examination:

* * * and nothing contained in this file was considered in arriving at the findings of fact contained in the Compensation Order. * * *"

2. Much of the testimony was not only irrelevant, but in addition almost unintelligible. For instance, the testimony of one Henry Bell, a half-brother of the deceased employee, was confusing, permeated with inconsistencies and inaccuracies, and bore only in the most remote fashion upon the questions before the Court.

3. The Deputy Commissioner, in a letter accompanying the transmission of his personal file, stated: "This file is exclusive of the transcript of testimony

4. Only three witnesses testified. No recitation of the testimony of Henry Bell will be attempted. See Note 2 supra. Except where specified, the summary of testimony is based upon that of the claimant.

5. The notice itself was not placed in evidence. The Commissioner merely noted that it had been filed.

"Q. You wouldn't do it, would you? A. No, I didn't want to go back." (N.T. 69.)

Claimant also admitted to having a boy friend beginning in 1950 and apparently continuing through the date of the hearing, September 17, 1957.

Anna Fitzgerald, called as a witness on behalf of Nancy, testified that she first met Nancy after "her and George (decedent) were married." (N.T. 97.) She was uncertain of the date of this meeting and offered no facts to buttress the conclusion contained in her statement.

■■ Initially, the Court may state that it agrees with the Commissioner that the evidence indicates a desertion in 1938. Regardless of whether decedent left claimant "because of Nancy", the undisputed testimony of claimant that he left without cause and without her consent, and that he refused to speak to her when she sought his return establishes a desertion within the meaning of the Act. A desertion may be predicated on grounds other than those related to marital misconduct. Cf. Great American Indemnity Co. v. Belair, D.C.D.Conn. 1957, 160 F.Supp. 784, 786, affirmed per curiam, 2 Cir., 1958, 254 F.2d 131.

The Commissioner seeks support for his findings that claimant was living apart from decedent at the time of his death by reason of his desertion and for justifiable cause in three facets of the testimony: (1) claimant's assertion that decedent left "because of Nancy"; (2) Anna Fitzgerald's testimony that Nancy and decedent had married; and (3) the fact that Nancy had filed the notice referred to above.[6] From this evidence the Commissioner concludes that a meretricious relationship existed between Nancy and decedent. He then states that it is reasonable to infer from Nancy's "claim" to be the "surviving wife" that such relationship continued until decedent's death. In light of this, the decedent's offer to return is discounted on the theory that he could not seriously

and sincerely make such an offer due to his infidelity; and claimant was therefore free to refuse. Hence, it is argued, the desertion continued unaffected until death, and the infidelity was itself justifiable cause for living apart.

Whether an offer of reconciliation made under the circumstances found by the Commissioner would preclude claimant from compensation under the Act, see Thompson v. Lawson, 5 Cir., 1953, 205 F.2d 527, affirmed 1954, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733, need not be decided; for the finding of continued infidelity to the time of death cannot stand.

■■ Before stating the conclusions of the Court, it is appropriate that the general principles of review here applicable be briefly outlined. The parties have agreed that the criterion to be utilized in assessing the findings is the familiar one of "substantial evidence on the record considered as a whole". See O'Leary v. Brown-Pac.-Maxon, 1951, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483. This test is embodied in the Administrative Procedure Act, 5 U.S.C.A. § 1009(e)(5), which Act governs review of compensation orders under the Longshoremen's Act. United States Fidelity & Guaranty Co. v. Donovan, 1954, 94 U.S. App.D.C. 377, 221 F.2d 515, 518 note 12; Colonna's Shipyard, Inc., v. O'Hearne, 4 Cir., 1952, 200 F.2d 220, 223; Great American Indemnity Co. v. Belair, supra, 160 F.Supp. at page 785. See also, O'Leary v. Brown-Pac.-Maxon, supra, 340 U.S. at page 508, 71 S.Ct. at page 472. While the difficulties encountered in applying this standard are manifest, guidance is not lacking. The principles announced by Justice Frankfurter in discussing court review of administrative determinations under the Administrative Procedure Act are of immeasurable assistance. Speaking for the Court in the context of review of a Labor Board order he stated:

"* * * The legislative history * * * demonstrates a purpose to

6. See Note 5 supra.

impose on courts a responsibility which has not always been recognized * * *.

" * * * [T]he Administrative Procedure Act * * * direct[s] that courts must now assume more responsibility for the reasonableness and fairness of * * * decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds * * *. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record * * clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 489–490, 71 S. Ct. 456, 465, 95 L.Ed. 456.

While the evidence may support a finding of infidelity by the decedent, the Commissioner's conclusion that it continued until his death fails to meet the test. The only indication as to the duration of the infidelity is the notation by the Commissioner that Nancy filed a notice of election to sue a third party in which she alleged that she was the "surviving wife" of decedent. The Commissioner states in his brief that "if Nancy believes she is the statutory widow * * * it would seem to be a fair inference that her relationship with deceased continued to the time of his death. * * * " [7]

■ As noted previously,[8] the notice of election was not submitted into evidence. The only reference to it is the statement of the Commissioner. The record is totally devoid of supplemental data or information explanatory of the claim. Such a claim constitutes merely an untested and uncorroborated assertion. It should be noted in this regard that Nancy was present at the hearing, but did not testify regarding her relation to the decedent. Nor was any other evidence concerning the relationship introduced, even though it normally should have been readily available. Moreover, a claim to be a "surviving wife" may be premised upon facts other than cohabitation at the time of death. Thus, the evidence relied upon by the Commissioner cannot be characterized as "substantial". Cf. Shields v. Folsom, D.C.E.D.Pa.1957, 153 F.Supp. 733, 735–737. Nor may an inference be drawn from the mere existence of the relationship at an earlier date that it continued until death, or even until 1952 when the definite offer to return was made. Even if the allegation contained in the notice of election that Joyce Smith was the child of decedent be taken as true, this would establish the existence of such a relationship only as of the latter part of 1942 in view of the age of the child. The time element precludes the inference. Therefore, the finding must fall.

■ Indeed, even accepting arguendo the Commissioner's findings, there is no evidence that the claimant refused the offers of reconciliation *because* of the decedent's supposed infidelity. As applied to the facts of this case, the clear purport of the statute is that the motivation for living apart must be the continued cohabitation of the husband. Such is not in any way indicated by the record. The testimony of claimant that "I didn't want to go back", while perhaps not rebutting such a finding, certainly does not support it. To conclude that the rejection of the offer stemmed from decedent's infidelity would be nothing more than speculation in light of the total absence of supporting evidence.

■ What has been said is not, however, dispositive. The question remains whether, excluding the finding of continued infidelity, claimant may yet be entitled to compensation by virtue of the

---

7. Brief for defendant, p. 8.

8. See Note 5 supra.

original desertion. On this point the decedent's positive offer to return, occurring in 1952, is deemed decisive.

In Thompson v. Lawson, 1954, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733, the Court held that an attempted remarriage by a deserted wife forfeited her claim to compensation since she was no longer living apart from her husband "by reason of his desertion". The Court reasoned that she had made a " * * * conscious choice to terminate her prior conjugal relationship by embarking upon another permanent relationship." Id., 347 U.S. at page 337, 74 S.Ct. at page 557. By her act she " * * * had severed all meaningful relationship with the decedent." Id., 347 U.S. at page 336, 74 S.Ct. at page 556.

In the instant case, the refusal of the offer of reconciliation evidences much the same "conscious choice to terminate the conjugal relationship." While not as extreme as a bigamous remarriage, both acts demonstrate an intention on the part of the wife to go her separate way.

The fact that a bigamous remarriage may be morally and legally more reprehensible does not appear to be a sufficiently distinctive feature. The Court in Thompson specifically refrained from relying upon the process of "assessing the marital conduct of the parties", Id., 347 U.S. at page 336, 74 S.Ct. at page 556, stating, as mentioned above, that the crucial point was the status of the wife with relation to the deceased. Cf. Great American Indemnity Co. v. Belair, supra, 160 F.Supp. at pages 785–786.

Support for this analysis is found in the opinion of the Circuit Court in the Thompson case, 5 Cir., 1953, 205 F.2d 527. The court held in the alternative that the refusal of an offer to return negated the right of the wife to compensation. Id. at page 529. It may also be noted that the attempted remarriage in the Thompson case occurred 15 years after the desertion; while the offer to return upon which the Circuit Court based its alternative holding was made 26 years after desertion. Thus, any argument based upon the elapsed time between the desertion and subsequent offer in the instant case (14 years) is devoid of merit.

In conclusion the record definitely established that the claimant was neither living with the decedent at the time of his death nor was she dependent upon him for support. The evidence does not establish a desertion at the time of death and there is absolutely no evidence to support the finding that she was living apart from him at the time of death for justifiable cause. Claimant, therefore, does not establish herself as a person entitled under the provisions of the Act to receive death benefits. Judgment, therefore, must go to the plaintiff. An appropriate order for such judgment will be submitted by the plaintiff.