**Mary Stewart POWELL, Appellant,**

v.

**William K. ROGERS, Deputy Commissioner, United States Employees' Compensation Commission, 13th Compensation District, Appellee,**

**STATE COMPENSATION INSURANCE FUND, Real Party in Interest-Appellee.**

**No. 72-2884.**

United States Court of Appeals, Ninth Circuit.

May 16, 1974.

John P. Riordan (argued), Darwin & Riordan, San Francisco, Cal., for appellant.

Judith S. Feigin (argued), John F. Meadows, Atty. in Charge, Robert J. Finan, Admiralty & Shipping Section, U. S. Dept. of Justice, James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellee.

Robert A. Laporta (argued), San Francisco, Cal., for real party in interest —State Compensation.

Before ELY and SNEED, Circuit Judges, and WILLIAMS,* District Judge.

OPINION

SNEED, Circuit Judge:

The appellant, Ms. Mary Stewart Powell, brought this action pursuant to Section 21 of the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., before the Compensation Commission for the 13th Compensation District, which denied the appellant's claim for death benefits under the above Act as the "surviving wife" or "widow" of Mr. Amadee B. Powell. In the district court the Deputy Commissioner and the State Compensation Insurance Fund, the real party in interest, moved for summary judgment dismissing the appellant's action. A motion for summary judgment setting aside the Deputy Commissioner's order and finding that the appellant was entitled to judgment on her claim as a matter of law was also filed. The appellant's motion was denied and that of the Deputy Commissioner and the State Insurance Board was granted. This appeal resulted. Our jurisdiction rests on 28 U.S.C. § 1291, while that of the district court flows from 33 U.S.C. § 901.

In large part because of the appellant's commendable candor, there is no dispute about the facts. She and the decedent, Mr. Amadee B. Powell, lived together from 1955 until his death in 1969 but did not undergo a formal or ceremonial marriage. Three children were born of this union, and the entire household was supported by the decedent. During most of this period the decedent was lawfully married to another, a marriage of which the appellant was aware. This marriage was dissolved by divorce in 1965, but there occurred no ceremonial marriage by the Powells thereafter. In the words of the appellant, her marriage was legal "[I]n the sight of God, yes; but in the sight of man, no."

The Deputy Commissioner found that the Powells lived together as man and wife in the States of California and Ne-

---

* Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation.

vada, that death benefits should be paid on behalf of the three minor children to the appellant, their mother and natural guardian, but that no death benefits were payable to the appellant as a "surviving wife" or "widow". 33 U.S.C. §§ 902(16) and § 909.

There is no escape from the conclusion that under these facts appellant was neither the lawful nor putative wife of the decedent under California or Nevada law. Lawful marriage requires the "issuance of a license and solemnization." Section 4100, California Civil Code. To be a putative spouse one must believe in good faith that he is a party to a valid marriage. Vallera v. Vallera, 21 Cal.2d 681, 134 P.2d 761 (1943); Miller v. Johnson, 214 Cal.App.2d 123, 29 Cal.Rptr. 251 (1963); Union Bank & Trust Co. v. Gordon, 116 Cal.App.2d 681, 254 P.2d 644 (1953); In re Jackson's Estate, 112 Cal.App.2d 16, 245 P.2d 684 (1952). The appellant had no such belief. Her status was that of a common law wife under circumstances in which neither state with which the Powells had relevant contacts recognize a common law marriage. Sections 4100, 4213, California Civil Code; Section 122.010, Nevada Revised Statutes, Vol. IV. The issue before us is whether Ms. Mary Stewart Powell under these circumstances can be considered a "surviving wife" or "widow" under the Longshoreman's and Harbor Workers' Compensation Act. We hold that she can not.

This Circuit has recognized, as it must, that the meaning of Sections 902(16) and 909 of the Act is a question of federal law. Albina Engine and Machine Works v. O'Leary, 328 F.2d 877 (9th Cir., 1964). However, this Circuit also has recognized that in the absence of a statutory definition of "surviving wife" or "widow" the applicable local law supplies the meaning of these terms. Albina Engine and Machine Works v. O'Leary, *supra*; Bolin v. Marshall, 76 F.2d 668 (9th Cir., 1935).

California law, while not recognizing the common law marriage, does employ the putative spouse doctrine generously. Thus, a putative wife is entitled to California workmen's compensation death benefits. Neureither v. Workmen's Comp. App. Bd., 15 Cal.App.3d 429, 93 Cal.Rptr. 162 (1971); Brennfleck v. Workmen's Comp. App. Bd., 265 Cal. App.2d 738, 71 Cal.Rptr. 525 (1968). Quite properly, the putative spouse doctrine has been employed to permit such a spouse to qualify as a "surviving wife" under the Act here before us. Holland America Insurance Co. v. Rodgers, 313 F.Supp. 314 (D.C.N.D.Cal.1970). However, no case in California or Nevada has been found in which the common law wife has been extended the protection of the applicable workmen's compensation act, unless the common law marriage was validly created in a state which recognizes such marriages. Tatum v. Tatum, 241 F.2d 401 (9th Cir., 1957).

California also recognizes that the putative spouse is entitled to take by intestacy on the death of his spouse in the same manner as a validly married spouse. In re Krone's Estate, 83 Cal. App.2d 766, 189 P.2d 741 (1952); Mazzenga v. Rosso, 87 Cal.App.2d 790, 197 P.2d 770 (1948). In re Krone's Estate has been used to allow a putative wife to bring an action for the wrongful death of her putative husband. Kunakoff v. Woods, 166 Cal.App.2d 59, 332 P.2d 773 (1958). An agreement to pool earnings entered into by a putative spouse with the other member of the union has also been accorded the same protection that it would have received had there been a valid marriage. Sancha v. Arnold, 114 Cal.App.2d 772, 251 P.2d (1952).

In view of the failure of California and Nevada to recognize the common law marriage, and California's liberality in extending the equivalent of marital rights to a putative spouse, we are reluctant to depart from our practice of looking to the proper local law to provide the content of the terms "surviving wife" and "widow". To construe these terms to embrace the common law spouse to some extent would impose

upon the residents of California and Nevada a form of marriage which they have rejected in favor of, at least in the case of California, the putative spouse doctrine. It is in this manner that the necessary melioration of the requirements of a valid marriage is accomplished.[1]

It is urged upon us that both changing life styles and the cultural history of Blacks make necessary an interpretation of the Act that would recognize the rights of a surviving spouse of a common law marriage. This federal common law marriage, so to speak, would make uniform the application of the Act and eliminate from its administration the adventitious element of whether the law of a particular state recognized the common law marriage. These arguments are not without a certain appeal. We think, however, they more properly should be directed to Congress. Our view is strengthened by the fact that reliance on local law to supply the meaning of "surviving wife" and "widow" has existed since passage of the Act and Congress has not chosen to intervene. Whatever may be our desire to reform the law, it must be subordinate to our duty faithfully to interpret it in a reasonably consistent manner.

Finally, it has been suggested that the Supreme Court in Thompson v. Lawson, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733 (1954) has instructed us to interpret the Act in the manner we are rejecting. In our view Thompson v. Lawson teaches no such lesson. The Court there was confronted with a claimant, deserted but not divorced by the decedent, who had not lived with the decedent for 26 years prior to his death and who had "married" and "divorced" another during the intervening period. The issue was whether the claimant was a "widow" within the meaning of the Act, which is defined to include "only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart from justifiable cause or by reason of his desertion at such time," 33 U.S.C. § 902(16). The Court resolved the issue against the claimant. She was neither living with, nor dependent for support upon, the decedent. Furthermore, she was not living apart "for justifiable cause or by reason of his desertion at such time." Her purported remarriage severed the "conjugal nexus" which the Act requires as the basis of her claim. 347 U.S. at 337. A deserted wife remains a deserted wife for the purposes of the Act only so long as she preserves the "conjugal nexus."

This holding can not be construed to mean that a common law marriage, as defined by federal law, is a "conjugal nexus" and that it alone is sufficient to qualify the claimant as a "surviving wife" or "widow." Such a meaning excessively extends the relatively narrow holding of the Supreme Court which, as a matter of fact, was designed to reject a holding of this Court which indicated that a claimant who was once a deserted wife remained one for the purposes of the Act although she had "remarried" another. 347 U.S. at 335. See Moore Dry Dock Co. v. Pillsbury, 169 F.2d 988 (9th Cir., 1948). It is for others to determine whether such an extension is desirable.

Affirmed.

1. In re Marriage of Cary, 34 Cal.App.3d 345, 109 Cal.Rptr. 862 (1973) holds that property acquired during "an actual family relationship, with cohabitation and mutual recognition and assumption of the usual rights, duties, and obligations attending marriage", in which both parties were aware that the marriage was not valid, is to be divided equally pursuant to § 4800, Cal.Civ.Code. We are not prepared to accept this decision standing alone as recognition of the common law marriage by California.

For a general discussion of the status of California law with respect to the rights of a meretricious spouse, see Pinnolis, Illicit Cohabitation: The Impact of the Vallera and Keene Cases on the Rights of the Meretricious Spouse, 6 U.C.D.L.Rev. 354 (1973).