601 F.2d 1306
 RYAN-WALSH STEVEDORING CO., INC. and Employers National
Insurance Company, Petitioners,
v.
Doristine TRAINER, Gwendolyn Brown, and Director, Office of
Workers' Compensation Programs, U. S. Department
of Labor, Respondents.
 No. 78-1719.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 10, 1979.
 
 Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, W. Boyd Reeves, Mobile, Ala., for petitioners.
 Thomas D. Wilcox, Nat'l Assn. of Stevedores, Washington, D. C., for Nat'l Assn. of Stevedores amicus curiae.
 Simon, Wood & Gardberg, James C. Wood, J. Randall Crane, Mobile, Ala., Gilbert T. Renaut, Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., for respondents.
 Petition to Set Aside an Order of the Benefits Review Board.
 Before GODBOLD, SIMPSON and RONEY, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Petitioners, Ryan-Walsh Stevedoring Company, Incorporated and Employers National Insurance Company seek review of a final order entered by the Benefits Review Board ("Board") of the United States Department of Labor awarding death benefits under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950 (1976), to respondents Doristine Trainer and Gwendolyn Brown. In its decision and order the Board found that Doristine Trainer and Gwendolyn Brown were the "widow" and "child", respectively, of the deceased employee, Marion Trainer, and therefore entitled to compensation under 33 U.S.C. § 909 (1976).[1] For the reasons stated hereinafter we affirm the Board's award of benefits to Gwendolyn Brown, but vacate the award to Doristine Trainer and remand to the Board for further findings.
 
 I. FACTS
 
 2
 Marion Trainer was an employee of petitioner Ryan-Walsh Stevedoring Company, Incorporated on October 10, 1975 when he sustained an injury resulting in his death on October 18, 1975. The parties stipulated that the injury and resulting death arose out of and in the course of Marion Trainer's employment. Thereafter, Doristine Trainer and Gwendolyn Brown filed claims for death benefits payable under the LHWCA. Petitioners, although stipulating generally that the claim fell under the LHWCA, asserted that benefits were not due because Doristine Trainer was not decedent's "widow" and Gwendolyn Brown was not decedent's "child" within the meaning of the act. See 33 U.S.C. §§ 902(14) ("child"), 902(16) ("widow"). Pursuant to 33 U.S.C. § 919(d) (1976),[2] and according to the requirements of 5 U.S.C. §§ 554, 556, 557 (1976), the matter proceeded to a hearing before an administrative law judge ("ALJ"). We summarize the evidence adduced at this hearing as it relates to the respondents' claims.
 
 A. Claim of Doristine Trainer
 
 3
 Doristine Kelker (Trainer), respondent, and Fred Wilson McCreary participated in a marriage ceremony on March 15, 1941, in Pensacola, Florida. The ceremony was performed in the home of Doristine's parents by Millard Fountain, a Purported minister. In attendance were Doristine's father, other members of her family, and several members of McCreary's family, including his mother. At the hearing before the ALJ, Doristine testified that: she went through the marriage ceremony with McCreary because she had become pregnant by him; she did not think she was actually being married because the man who performed the ceremony was not a "preacher"; she did not sign the marriage license or the application for this license; she and McCreary lived together as husband and wife for approximately one week, after which he abandoned her; she bore a child, Harriet McCreary, on July 18, 1941; she ultimately moved to Mobile, Alabama, where she met Marion Trainer; and, She never obtained a divorce from McCreary.
 
 
 4
 McCreary did not testify at the hearing, but his deposition was admitted into evidence. In his deposition McCreary testified that: he married Doristine Kelker in 1940 ; he was drunk during the marriage ceremony, which was performed by a minister whose name he could not remember; he lived with his wife Doristine for five years; he came home from work one day and found Doristine and their daughter, Harriet, were gone; he had neither seen nor been contacted by Doristine since 1945; he had never been served with any divorce papers nor received any notification that a divorce action had been filed against him.
 
 
 5
 On September 13, 1952, Doristine participated in a marriage ceremony, conducted in Leaksville, Mississippi, with decedent Marion Trainer. The marriage license, Exhibit C-3, reflects that Doristine was married under her maiden name Kelker. She and Marion Trainer lived together as husband and wife in Mobile, Alabama, from the day they participated in this marriage ceremony until Marion's death, a period covering approximately twenty-three years. During this time they purchased a house as husband and wife, had joint checking and savings accounts, filed joint federal income tax returns, and purchased two cemetery plots for themselves. According to John H. White, the Trainers' next-door neighbor for approximately sixteen years, Doristine and Marion Trainer were generally known in the community as being married.
 
 
 6
 In an attempt to explain how she could have married Marion Trainer when She had not obtained a divorce from McCreary, Doristine testified that her minister had told her that she did not have to get a divorce because McCreary was a sinner and Doristine a Christian, "and anybody who married an unbeliever husband, they did not have to get any divorce and that is why I did not get one". R. vol. II, at 1-64. Doristine also testified that her brother had told her that "if anybody left you at least seven years it was an automatic divorce from them". Id.
 
 B. Claim of Gwendolyn Brown
 
 7
 Gwendolyn Brown is the daughter of Samuel Lewis Brown and Harriet McCreary, Doristine's daughter by Fred McCreary. She was born in Brooklyn, New York, on August 15, 1958. With the exception of one year, when she was in the eighth grade, Gwendolyn lived with her grandmother, Doristine, and Marion Trainer until the latter's death. During his lifetime Marion Trainer provided financial support for Gwendolyn in various forms, E. g., payment for dental expenses, food, musical instrument for the school band, automobile and gasoline and oil for this vehicle. Marion Trainer treated Gwendolyn "just like his own child": taught her how to drive, gave her an allowance, disciplined her when necessary, and took her on social visits and fishing trips with him. Gwendolyn called Marion Trainer "Daddy" and he called her "Niecey".
 
 
 8
 In 1966 Gwendolyn's natural father, Samuel Brown, died. Thereafter the Social Security Administration has paid a support allowance for Gwendolyn. This allowance started as $55 per month in 1966, and totaled $110 per month at the time the hearing was held before the ALJ.
 
 
 9
 Gwendolyn Brown is now enrolled in a college in Mobile, Alabama. She never received any financial support from either of her natural parents.
 
 C. ALJ Decision and Order
 
 10
 The ALJ denied respondents' claims, finding that Doristine Trainer was not decedent's "widow" and Gwendolyn Brown not decedent's "child" within the meaning of those terms under the LHWCA. With respect to Doristine Trainer's claim, the ALJ found that the March 15, 1941 marriage ceremony between Doristine and McCreary was valid under Florida law. Additionally, the ALJ held that "the evidence presented at the hearing (was) sufficient to establish that the marriage between Doristine Delker (sic) and Fred McCreary has not been legally dissolved by divorce or otherwise". R. vol. I, at 215. He concluded, therefore, that petitioners herein had rebutted the presumption, arising under Alabama law, that Doristine's prior marriage to McCreary had ended in divorce, thereby rendering the more recent marriage to Marion Trainer invalid. Consequently, Doristine Trainer was not Marion Trainer's "widow" because she had never been his lawful wife.
 
 
 11
 With respect to Gwendolyn Brown's claim the ALJ found that Brown's primary financial support for the year immediately preceding Marion Trainer's death was furnished by monthly support allowances paid by the Social Security Administration. While conceding that "decedent furnished part of (Gwendolyn Brown's) support and treated her as a daughter during that time", the ALJ concluded that she did not qualify as a "dependent child" for death benefits from Marion Trainer because her primary financial support was based upon Social Security allowances accruing by reason of her natural father's death.
 
 
 12
 Pursuant to 33 U.S.C. § 921(b)(3) (1976),[3] the decision and order of the ALJ were appealed to the Board.
 
 D. Board Decision
 
 13
 The Benefits Review Board reversed the ALJ's denial of benefits. In so doing, the Board held: (1) under "new guidelines" it was then establishing for construing the terms "widow" and "widower" as used in the LHWCA, Doristine Trainer was the widow of Marion Trainer for purposes of receiving death benefits under the Act irrespective of her marital status under state law; and (2) Gwendolyn Brown was entitled to death benefits as decedent's "surviving child" since she was a "child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury".
 
 
 14
 With regard to Doristine Trainer's claim, the guidelines fashioned by the Board for construing the terms "widow" and "widower" read as follows:
 
 
 15
 (T)he Board is establishing herein new guidelines for construing "widow" and "widower" as those terms are used in the Act. Under these guidelines we need not refer to or apply the state laws of Florida or Alabama. Rather, for purpose of receiving death benefits under the Act, it shall be conclusively established that a claimant is a "widow" or "widower" if, at the time of the death of the employee, and for at least ten years prior to his or her death, the employee and the claimant had lived together in the same household and held themselves out to their relatives, friends, neighbors and tradespeople in the community in which they resided as husband and wife. Joint ownership of real and personal property, joint bank accounts, and joint tax returns are some factors which may be considered as evidence that the employee and claimant held themselves out as husband and wife. However, where the evidence shows that the employee and the claimant had lived together for a substantial period of time, but for less than ten years, then, based upon the evidence in the record considered as a whole and the purposes of the Act, in the exercise of sound judgment a deputy commissioner or administrative law judge shall decide whether the claimant should be deemed a "widow" or "widower". In making that decision, a deputy commissioner or administrative law judge shall take into consideration all of the facts and circumstances in evidence that have a bearing upon the relationship of the employee and the claimant during the time they lived together. Among the circumstances to be considered are those, enumerated above, in regard to "holding themselves out as husband and wife". However, any "widow" or "widower" claim based on living together, as described above, cannot prevail if another claimant proves "widow" or "widower" status on the basis of (1) a valid ceremonial or common law marriage to the deceased employee, and (2) fulfillment of the other requirements of Section 2(16) that is, by proof that the claimant was dependent for support upon the employee at the time of death, or that the claimant and the employee were living apart at the time of death for justifiable cause or by reason of employee's desertion.
 
 
 16
 R. vol. I, at 31-33. Applying these "new guidelines", the Board concluded that Doristine Trainer was Marion Trainer's "widow" because: she and decedent had lived together in the same household as husband and wife for more than ten years; they held themselves out as husband and wife and were so recognized in the community; and no other claimant came forward and alleged herself to be the widow of Marion Trainer.[4]
 
 
 17
 With regard to Gwendolyn Brown's claim, the Board concluded that the ALJ erroneously found that a claimant's primary source of financial support was dispositive of the issue of whether she was a "surviving child" within that meaning of the term under the LHWCA. The Board noted that the LHWCA's definition of "child" expressly included a "child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury". See 33 U.S.C. § 902(14) (1976). Since death benefits under the LHWCA are payable to "surviving children", Id. § 909, without regard to financial dependency upon the deceased employee, other than that required by section 902(14), the Board held that the ALJ misconstrued the requirements of the Act in looking to the claimant's primary source of financial support when the claim was based upon "in loco parentis" status and not financial dependency.
 
 II. STANDARD OF REVIEW
 
 18
 "Although the standard of review in this Court is not set out in the statute, it is evident that we are to review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations." Presley v. Tinsley Maintenance Service, 529 F.2d 433, 436 (5th Cir. 1976). Accord Army & Air Force Exchange Service v. Greenwood, 585 F.2d 791, 794-95 (5th Cir. 1978). See generally 33 U.S.C. § 921(c) (1976).[5]
 
 
 19
 In the present context, therefore, we must determine whether the Board erred, as a matter of law: (1) in formulating "new guidelines" for ascertaining whether Doristine Trainer was a "widow" under the LHWCA; and (2) in concluding that the ALJ erred, as a matter of law, in finding that Gwendolyn Brown was not a "child" within the meaning of the LHWCA after he found, as a matter of fact, that Marion Trainer had provided some of her financial support and in other respects treated her as his child.
 
 III. CLAIM OF DORISTINE TRAINER
 
 20
 Under the LHWCA an employee's "widow" is entitled to death benefits under 33 U.S.C. § 909. See note 1 Supra. The term "widow" is defined by the Act.
 
 
 21
 The terms "widow or widower" includes only the Decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time.
 
 
 22
 33 U.S.C. § 902(16) (1976) (emphasis added). Hence, the claimant must demonstrate that she was decedent's "wife" in order to qualify for death benefits. To determine whether a claimant is decedent's "wife" state law is dispositive because the LHWCA does not define this operative term. See Marcus v. Director, Office of Workers' Compensation Programs, 179 U.S.App.D.C. 89, 92 & n.4, 548 F.2d 1044, 1047 & n.4 (1976) (definition of decedent's "husband", not found in LHWCA, to be determined according to local law of domestic relations); Powell v. Rogers, 496 F.2d 1248, 1250 (9th Cir.), Cert. denied, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974) (in the absence of a statutory definition in LHWCA of surviving "wife" the applicable local law supplies the meaning of that term); Albina Engine & Machine Works v. O'Leary, 328 F.2d 877, 878 (9th Cir.), Cert. denied, 379 U.S. 817, 85 S.Ct. 35, 13 L.Ed.2d 29 (1964) (although meaning of LHWCA is question of federal law, local law gives meaning to term surviving "wife" when undefined by the Act).[6] Contrary to the Board's reasoning[7] and the positions urged by respondent Director, Office of Workers' Compensation Programs,[8] Thompson v. Lawson, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733 (1954), does not permit the formulation of a federal common law of marriage or domestic relations to determine whether a claimant is a deceased employee's "widow" or "widower" under the LHWCA.
 
 
 23
 In Thompson v. Lawson two women sought death benefits under the LHWCA; each claimed to be the deceased employee's "widow". Petitioner's claim for death benefits had been denied on the basis that she was living apart from the decedent Not "by reason of his desertion". 33 U.S.C. § 902(16). The findings made by the Deputy Commissioner showed that petitioner had married the decedent and lived with him as husband and wife for several years. Decedent then deserted petitioner: he never lived with her again, and never contributed anything to the support of their two children. Both decedent and petitioner "married" other mates, petitioner's "second marriage" ending in a formal divorce. Shortly before decedent's death he asked petitioner to "take him back". She refused, "having no intention of ever again living with him and resuming the relationship of husband and wife". 347 U.S. at 335, 74 S.Ct. at 556.
 
 The Supreme Court observed that:
 
 24
 The single, unentangled question before us is whether, on these unchallenged facts, (petitioner) was at the time of (decedent's) death in 1951, his statutory "widow", as that term is described by Congress in the Longshoremen's Act. . . .
 
 
 25
 347 U.S. at 336, 74 S.Ct. at 556. While holding that petitioner was not decedent's statutory widow because at the time of his death she was not living apart from him "by reason of his desertion", the Court said:
 
 
 26
 We do not reach this conclusion by assessing the marital conduct of the parties. That is an inquiry which may be relevant to legal issues arising under State domestic relations law. Our concern is with the proper interpretation of the Federal Longshoremen's Act. Congress might have provided in that Act that a woman is entitled to compensation so long as she is still deemed to be the lawful wife of the decedent under State law, as, for example, where a foreign divorce obtained by her is without constitutional validity in the forum State. But Congress did not do so. It defined the requirements which every claimant for compensation must meet. Considering the purpose of this federal legislation and the manner in which Congress has expressed that purpose, The essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death, which, for present purposes, means that she must continue to live as the deserted wife of the latter. That nexus is wholly absent here. Julia herself, by her purported remarriage, severed the bond which was the basis of her right to claim a death benefit as Otis' statutory dependent.
 
 
 27
 Id. at 336-37, 74 S.Ct. at 556-57 (emphasis added).
 
 
 28
 The reasoning and result in Thompson v. Lawson, supra, have been followed in cases where the question before the court was whether a claimant was a decedent's statutory "widow" when she was living apart from him at the time of his death allegedly "by reason of his desertion". See General Dynamics Corp. v. Director, Office of Workers' Compensation Programs, 585 F.2d 1168 (1st Cir. 1978); Matthews v. Walter, 168 U.S.App.D.C. 27, 512 F.2d 941 (1975); Liberty Mutual Insurance Co. v. Donovan, 218 F.2d 860 (D.C.Cir. 1955). No court, however, has interpreted Thompson v. Lawson's "conjugal nexus" test as authorizing the creation of a federal common law of marriage to determine whether the claimant, in the first instance, was married to the deceased employee. One court has specifically rejected such an argument. Powell v. Rogers, 496 F.2d 1248, 1251 (9th Cir.), Cert. denied, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974).[9] We decline to adopt such an expansive reading of the Court's holding in Thompson v. Lawson, supra. If the application of state law to the question of a claimant's status as a deceased employee's wife produces results inconsistent with the remedial nature of the LHWCA, and calls for the formulation of uniform federal standards, the proper forum for reform is legislative, not judicial.
 
 
 29
 We hold, therefore, that the Board's order awarding death benefits under the LHWCA to Doristine Trainer must be vacated: the Board's determination that Doristine Trainer was the deceased employee's statutory " widow" was erroneously based upon "new guidelines" rather than the applicable state law of domestic relations,[10] as required by Seaboard Air Line Railway v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916). On remand, the Board must decide whether Doristine Trainer was decedent's "wife" under state law notwithstanding her participation in a prior marriage ceremony with McCreary. While expressing no opinion on the ultimate resolution of this issue, we do note that the current record lacks certain requisite findings of fact and conclusions of law and, therefore, does not afford the Board an adequate basis to make such a determination or permit meaningful review in this Court. See Todd Shipyards, Inc. v. Fraley, 592 F.2d 805, 806 (5th Cir. 1979). Hence, the Board, on remand, will find it necessary to remand this matter to the ALJ for the introduction of additional evidence, and further findings of fact and conclusions of law consistent with this opinion so as to enable the Board to determine whether Doristine Trainer was Marion Trainer's wife at the time of the latter's death.[11] See 33 U.S.C. § 921(b)(4). In making these findings and entering conclusions of law thereon the ALJ must recognize that in the "absence of Substantial evidence to the contrary" the LHWCA imposes a presumption that the claim comes within the provisions of the Act. 33 U.S.C. § 920 (1976). Additionally, all doubtful factual questions should be resolved in favor of the claimant, Doristine Trainer. Cf. Young & Co. v. Shea, 397 F.2d 185, 188 (5th Cir.), Cert. denied, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969) ("(I)n considering the proof offered by the parties the Commissioner operates under the statutory policy that all doubtful fact questions are to be resolved in favor of the injured employee or his dependent family".).
 
 IV. CLAIM OF GWENDOLYN BROWN
 
 30
 Gwendolyn Brown sought death benefits under the LHWCA as decedent Marion Trainer's "surviving child". 33 U.S.C. § 909 (1976); see note 1 Supra. The term "child" is defined by 33 U.S.C. § 902(14) (1976):"Child" shall include a posthumous child, a child legally adopted prior to the injury of the employee, a Child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him.
 
 
 31
 (emphasis added).
 
 
 32
 The ALJ denied Brown's claim for death benefits, finding that she did not qualify as a "dependent child".[12] The Board, on review, concluded that the ALJ had misconstrued the LHWCA in regard to Brown's claim based on "in loco parentis" status. The Board held that Brown qualified under section 902(14) as a child in relation to whom Marion Trainer stood in loco parentis for at least one year prior to the injury causing his death. The Board emphasized that the LHWCA provides that death benefits are payable to " 'surviving child or children of the deceased'. (The statute) does not refer to the source of the financial support of the child before the death of the employee." R. vol. I, at 49.
 
 
 33
 In light of the ALJ's findings that decedent Marion Trainer had furnished part of Gwendolyn Brown's financial support, and in other respects "treated her as a daughter", the Board held that Gwendolyn Brown was a child[13] in relation to whom Marion Trainer stood in a relation of in loco parentis for at least one year prior to his death. In defining the term "in loco parentis" the Board looked to Texas Employers' Insurance Association v. Shea, 410 F.2d 56 (5th Cir. 1969), and Ingalls Shipbuilding Corp. v. Neuman, 322 F.Supp. 1229 (S.D.Miss.1970), Aff'd, 448 F.2d 773 (5th Cir. 1971) (per curiam). The Board properly read this Court's opinion in Texas Employers' to mean that the LHWCA's definition of "child", "in accord with the policy of the Act as a whole, must be liberally construed in favor of coverage 'and in a way which avoids harsh and incongruous results.' " 410 F.2d at 59 (citations omitted). Based upon that broad proposition, the Board construed this Court's affirmance in Neuman[14] to compel the finding here that Gwendolyn Brown was a child in relation to whom the decedent Marion Trainer had stood in loco parentis:
 
 
 34
 In the case now before the Board, the administrative law judge concluded that decedent furnished part of Gwendolyn Brown's support and treated her as a daughter. He also made findings of fact in accordance with the evidence from the record, stated above, in regard to the relationship between Gwendolyn Brown and Marion Trainer. Therefore, we find that the administrative law judge's denial of benefits, based solely on his finding that Gwendolyn Brown's "primary support was based upon the Social Security allowance" is in error. According to the Texas Employers' and Ingalls Shipbuilding cases, Supra, Gwendolyn Brown clearly was a child in relation to whom Marion Trainer stood in loco parentis for at least one year prior to the time of his injury. She is entitled to death benefits under the Act.
 
 
 35
 R. vol. I, at 51.
 
 
 36
 Since there is substantial evidence to support the ALJ's findings that Marion Trainer treated Gwendolyn Brown as his daughter and provided some financial support for her, we affirm the Board's award of benefits because it is in accordance with the applicable law; the Board properly reversed the ALJ, who erroneously held that the source of a child's primary financial support controlled whether benefits were payable under section 909 when the claimant sought benefits as a child in relation to whom the deceased employee stood in loco parentis.
 
 V. ATTORNEYS' FEES
 
 37
 Counsel for respondents Doristine Trainer and Gwendolyn Brown have submitted to this Court a motion to assess the attorneys' fees and expenses of claimants-respondents against decedent's former employer, petitioner Ryan-Walsh Stevedoring Company, Incorporated.
 
 
 38
 A claimant's reasonable legal expenses are recoverable from an employer who has contested that no compensation is owing under the LHWCA when the claimant ultimately prevails. Ayers Steamship Co. v. Bryant, 544 F.2d 812, 813 (5th Cir. 1977); 33 U.S.C. § 928(a) (1976).[15] The LHWCA also requires that in all cases before this Court on review we must approve the fees of the attorneys representing the prevailing claimant for work of counsel which was directly related to our review. Ayers, 544 F.2d at 814; 33 U.S.C. § 928(c) (1976).[16]
 
 
 39
 In accordance with the requirements of this Court's decision in Ayers, Counsel for respondents submitted a sworn and verified list in which they described and itemized all work done and expenses incurred on behalf of respondents. Since we have affirmed the award of benefits to Gwendolyn Brown but have vacated that portion of the Board's order awarding benefits to Doristine Trainer, we directed counsel to supplement their motion by allocating and identifying the fees and expenses attributable to the separate claims of Doristine Trainer and Gwendolyn Brown.
 
 
 40
 In assessing the amount of fees and expenses recoverable, we have considered those factors enumerated in Ayers, supra, and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), including the hours worked,[17] the reasonable hourly rate for the attorneys involved,[18] the size of the recovery,[19] the quality of the work and the complexity of the issues involved. See also Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co., 598 F.2d 945 at 953 (5th Cir. 1979) (essential elements of application for attorney's fees are disclosure of hours devoted to each category of work in connection with appeal, reasonable hourly rate for the person performing the work, and verification of the hourly itemization). Based on these factors we conclude and hereby order that counsel for respondent Gwendolyn Brown, who has prevailed on her claim, are entitled to recover as reasonable fees, over and above the compensation awarded, the sum of $1331.80 from petitioner Ryan-Walsh Stevedoring Company, Incorporated.
 
 VI. CONCLUSION
 
 41
 For the reasons stated, that portion of the order entered by the Benefits Review Board awarding compensation to Doristine Trainer is vacated, and the matter remanded to the Board for further proceedings consistent with this opinion. As to that part of the Board's order awarding benefits under the LHWCA to Gwendolyn Brown the petition for review is denied and the order of the Board in that respect is affirmed. Petitioner Ryan-Walsh Stevedoring Company, Incorporated, is also hereby ordered to pay counsel for respondent Gwendolyn Brown, as reasonable attorneys' fees, the sum of $1331.80.[20]
 
 
 42
 The Clerk of this Court is directed to assess taxable costs[21] incurred by the parties herein one-half against the petitioners and one-half against the respondent Doristine Trainer.
 
 
 43
 PETITION FOR REVIEW GRANTED IN PART, AND DENIED AND REMANDED IN PART FOR FURTHER PROCEEDINGS.
 
 
 
 [1]
 Section 909 provides in pertinent part:
 If the injury causes death, or if the employee who sustains permanent total disability due to the injury thereafter dies from causes other than the injury, The compensation shall be known as a death benefit and shall be payable in the amount and to or for the benefit of the persons following :
 (a) Reasonable funeral expenses not exceeding $1,000.
 (b) If there be a Widow or widower And no child of the deceased, to such widow or widower 50 per centum of the average wages of the deceased, during widowhood, or dependent widowerhood, with two years' compensation in one sum upon remarriage; and If there be a surviving child or children Of the deceased, the additional amount of 162/3 per centum of such wages for each such child; in case of the death or remarriage of such widow or widower, if there be one surviving child of the deceased employee, such child shall have his compensation increased to 50 per centum of such wages, and if there be more than one surviving child of the deceased employee, to such children, in equal parts, 50 per centum of such wages increased by 162/3 per centum of such wages for each child in excess of one: Provided, That the total amount payable shall in no case exceed 662/3 per centum of such wages. The deputy commissioner having jurisdiction over the claim may, in his discretion, require the appointment of a guardian for the purpose of receiving the compensation of a minor child. In the absence of such a requirement the appointment of a guardian for such purposes shall not be necessary. . . .
 33 U.S.C. § 909 (1976) (emphasis added).
 
 
 [2]
 33 U.S.C. § 919(d) (1976) provides:
 (d) Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of Title 5. Any such hearing shall be conducted by a administrative law judge qualified under section 3105 of that Title. All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.
 
 
 [3]
 Section 921(b)(3) provides:
 (3) The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.
 33 U.S.C. § 921(b)(3) (1976) (emphasis added). The statute clearly limits the Board's scope of reviewing factual findings by administrative law judges: "although the Review Board cannot substitute its views for those of the administrative law judge or engage in a 'de novo review of the evidence', the Board has the power to reverse the administrative law judge if his determinations are not supported by substantial evidence in the record as a whole". Army & Air Force Exch. Serv. v. Greenwood, 585 F.2d 791, 795 (5th Cir. 1978).
 
 
 [4]
 While basing the result attained on Doristine Trainer's claim upon this "new guideline", the Board expressed concern with the cursory treatment given by the ALJ to the validity of the first marriage ceremony between Doristine and McCreary, and the Alabama presumption that a prior marriage is presumed to have been dissolved by divorce. Specifically the Board said:
 The decision of the administrative law judge on the issue of whether Doristine Trainer was the widow of Marion Trainer is in error. The status of Millard Fountain as a person authorized to solemnize marriages was disputed by claimant Doristine Trainer, but there was no finding by the administrative law judge on that issue as required by 5 U.S.C. § 557(c). Moreover, his references to the "purported" minister, and "acceptance" of him by families suggest that the administrative law judge misconstrued the Florida statute. No reason or basis was given for the finding that McCreary's drunkenness did not invalidate the marriage. The cursory consideration given to the Alabama presumption also indicates that the issue was dealt with inadequately. However, it is not necessary to remand the case to the administrative law judge because the Board is establishing herein new guidelines for construing "widow" and "widower" as those terms are used in the Act.
 R. vol. I, at 31 (emphasis added). The language of the ALJ decision and order which gave the Board reason to express concern was as follows:
 Although Doristine stated at the hearing that she did not intend to get married on March 15, 1941, the circumstances then existing such as a marriage ceremony at her home in the presence of members of both families, her then pregnancy by the groom, etc., Cause me to disbelieve that portion of her testimony. Also, the Purported minister who performed the ceremony appears to have been Accepted by both families at the time as a proper person to perform that function. I have quoted a portion of the Florida statute to illustrate that it has a rather wide coverage in describing those church officials who may perform marriage ceremonies. A statement by Fred McCreary in 1976 that he was drunk on March 15, 1940 (sic), during the ceremony, does not invalidate the marriage in my opinion.
 It is my opinion and finding that the evidence presented at the hearing is sufficient to establish that the marriage between Doristine Delker (sic) and Fred McCreary has not been legally dissolved by divorce or otherwise. The presumption (under Alabama law that a prior marriage has been dissolved by divorce) is rebutted.
 R. vol. I, at 215 (emphasis added). The express language of the ALJ's decision reflects that he disbelieve that portion of Doristine's testimony in which she stated that she did not intend to marry McCreary; the ALJ did not expressly resolve the conflict between Doristine's and McCreary's testimony regarding Fountain's status as a minister. Even if the ALJ's decision can be read to contain a finding that Fountain was a person authorized to solemnize marriages within the language of the applicable Florida statutes, the Board May have been correct in observing that the families' "acceptance" of Fountain as a minister was not sufficient proof to establish that he was. In any event, the Board did indicate that the only reason it did not find it necessary to remand the matter back to the ALJ for further findings was its establishment of "new guidelines". Because we find that the Board erroneously disregarded applicable state law in formulating these "new guidelines", see Part III Infra, the Board will now find it necessary to pursue that course previously avoided remand to the ALJ for further findings. See generally 33 U.S.C. § 921(b)(4) (1976) (Board may remand case to ALJ for further appropriate action).
 
 
 [5]
 As indicated previously, note 3 Supra, the LHWCA limits the Board's scope of review, compelling the Board to accept factual findings of an ALJ if supported by substantial evidence on the record as a whole. 33 U.S.C. § 921(b) (3). The LHWCA does provide for review of Board orders but does not specify any scope of review
 (c) Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified. The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the court. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier. The order of the court allowing any stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that irreparable damage would result to the employer, and specifying the nature of the damage.
 33 U.S.C. § 921(c) (1976).
 
 
 [6]
 Cf. De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (in interpreting the word "children" in federal copyright statute conferring copyright renewal rights, state law determines whether an individual qualifies); Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916) (state law determines who are "next of kin" within meaning of FELA and entitled to recovery under that federal statute); Murphy v. Houma Well Serv., 409 F.2d 804, 808-11 (5th Cir. 1969) (meaning of the term "children" in the Jones Act determined by state law); Ellis v. Henderson, 204 F.2d 173 (5th Cir.), Cert. denied, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381 (1953) (whether claimant was "child" within meaning of LHWCA and entitled to death benefits thereunder determined according to state law insofar as statute's definition of term is incomplete)
 
 
 [7]
 In establishing "new guidelines" for construing the terms "widow" and "widower" as used in the LHWCA, the Board admitted that it was departing from the traditional approach of resorting to state law for interpreting these operative terms. While recognizing that the court of appeals decisions dealing with the definition of "surviving wife" uniformly cite Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916) for the proposition that terms relating to familial relationships are defined by reference to state law, the Board read Thompson v. Lawson, supra, as authorizing a determination of a claimant's status as a "surviving wife" apart from her marital status under state law. We hold that the Board erred in so disregarding state law. Although we need not reach the question, the Board's order could be challenged on other grounds: the "guidelines" established by the Board may have constituted "rule making" in violation of the Administrative Procedure Act's notice requirement, 5 U.S.C. § 553(b) (1976), and may have invaded the rule making authority expressly vested by the LHWCA in the Secretary of Labor, 33 U.S.C. §§ 902(6), 939(a) (1976), and delegated by the Secretary to the Office of Workers' Compensation Programs, 20 C.F.R. § 701.202 (1978). The Board is a quasi-judicial body empowered to resolve disputed legal issues, not to engage in the overall administration of the LHWCA through promulgation of rules. See Director, Office of Workers' Compensation Programs v. O'Keefe, 545 F.2d 337, 343 (3d Cir. 1976); 33 U.S.C. § 921(b)(3) (1976); 20 C.F.R. § 802.301 (1978)
 
 
 [8]
 Respondent Director, Office of Workers' Compensation Programs, argues that Thompson v. Lawson, supra, rendered the Seaboard rule doubtful under the LHWCA and permits the Board to fashion uniform federal standards for ascertaining whether a claimant is a "surviving wife" within the meaning of the Act. The Director also contends that the particular federal standard formulated by the Board should be upheld because it has a reasonable legal basis. Finally, the Director asserts that even if Thompson v. Lawson, supra, cannot be read so broadly, it should extend to remove the impediment of Doristine's prior marriage to McCreary. Again, we reject these contentions, holding that state law determines whether a claimant under the LHWCA is a "decedent's wife"
 
 
 [9]
 In Powell the court said:
 (The holding in Thompson v. Lawson ) can not be construed to mean that a common law marriage, as defined by federal law, is a "conjugal nexus" and that it alone is sufficient to qualify the claimant as a "surviving wife" or "widow". Such a meaning excessively extends the relatively narrow holding of the Supreme Court which, as a matter of fact, was designed to reject a holding of this Court which indicated that a claimant who was once a deserted wife remained one for the purposes of the Act although she had "remarried" another. . . . It is for others to determine whether such an extension is desirable.
 496 F.2d at 1251 (citations omitted).
 
 
 [10]
 Respondent Director has emphasized that in deciding whether Doristine Trainer is Marion Trainer's statutory "widow" the Board should look not to the domestic relations laws of Alabama or Mississippi, the state in which the second marriage ceremony was conducted, but to the workers' compensation laws of Mississippi. The Director suggests a two-step analysis. First, the Director contends that ordinary choice-of-law principles require that the law of Mississippi governs the validity of Doristine's marriage to Marion Trainer because the marriage ceremony was conducted in the state. See, e. g., Restatement (Second) of Conflict of Laws § 283(2) & comments e-k, at 235-39 (1971). Second, the Director asserts that under Albina Engine & Mach. Works v. O'Leary, 328 F.2d 877, 878-79 (9th Cir.), Cert. denied, 379 U.S. 817, 85 S.Ct. 35, 13 L.Ed.2d 29 (1964), Mississippi's workers' compensation law rather than the state's general law of domestic relations should govern Doristine's status as decedent's wife. We reject the Director's position on two grounds: (1) neither the ALJ nor the Board made or reviewed any findings of fact or conclusions of law regarding the choice-of-law question raised by the Director; and (2) even if Mississippi law does govern the validity of the marriage between Doristine and decedent, we decline to extend the Seaboard rule as far as the Director suggests. Although the Albina court did rely upon the Oregon Workers' Compensation Act in holding that the appellee therein was the decedent's surviving wife, the court also based its affirmance on the alternative ground of Oregon's general law of domestic relations. No court has held that a state workers' compensation law should govern the determination of a claimant's status as a deceased employee's "surviving wife" under the LHWCA when the state's general law of domestic relations May produce a contrary result. We decline to do so here, holding that the general law of domestic relations governs this issue
 
 
 [11]
 See note 4 Supra. Several issues must be confronted by the ALJ before the Board, when reviewing the ALJ decision, can determine if Doristine was Marion Trainer's statutory "widow": (1) whether the law of Mississippi or Alabama controls the validity of Doristine's marriage to Marion Trainer; (2) whether Doristine's marriage to McCreary was valid under Florida law; (3) whether Fountain was authorized by Florida law to solemnize marriages; (4) whether there was sufficient evidence upon which to base a finding that Fountain was authorized to solemnize marriages; (5) whether McCreary's admitted drunkenness invalidated the marriage ceremony; (6) whether Doristine and McCreary could be considered husband and wife under the doctrine of common law marriage then in effect in Florida; and, (7) whether any presumption, arising under either Mississippi or Alabama law, that Doristine's marriage to McCreary, if valid, was dissolved by divorce had been rebutted by the evidence adduced by petitioners herein. We note that the last issue may require the ALJ to afford the parties an opportunity to introduce additional evidence, for under the law of Alabama it may be necessary to introduce the court records of every county in which Doristine and McCreary lived to show that no divorce was ever obtained. See, e. g., Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135, 138 (1953); Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166, 170 (1944)
 
 
 [12]
 The ALJ specifically found that:
 (T)he primary support for Gwendolyn Brown for the year preceding decedent's death on October 18, 1974 (sic), was furnished by the monthly payment from Social Security. It is true that the decedent furnished part of her support and treated her as a daughter during that time. For the reason that her primary support was based upon the Social Security allowance she does not qualify as a Dependent child for death benefits from Marion Trainer.
 R. vol. I, at 216 (emphasis added).
 
 
 [13]
 Gwendolyn Brown is not disqualified as a "child" within the meaning of the statute by reason of her age because she is a student. See 33 U.S.C. §§ 902(14), (18) (1976)
 
 
 [14]
 In Neuman the district court affirmed, on alternative grounds, the award of death benefits under the LHWCA to two minor children. One ground upon which the court based its affirmance was that the two minors fell within the "in loco parentis" portion of the LHWCA's definition of a "child". The court concluded that the record clearly showed the deceased employee acquired the status of one "in loco parentis" where, from the time of each child's birth until their mother's death (twelve and four years respectively), he had the children in his home, treated them as members of his family, and provided paternal supervision, support, and education. 322 F.Supp. at 1247
 
 
 [15]
 Section 928(a) provides:
 If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.
 
 
 [16]
 Section 928(c) provides:
 (c) In all cases fees for attorneys representing the claimant shall be approved in the manner herein provided. If any proceedings are had before the Board or any court for review of any action, award, order, or decision, the Board or court may approve an attorney's fee for the work done before it by the attorney for the claimant. An approved attorney's fee, in cases in which the obligation to pay the fee is upon the claimant, may be made a lien upon the compensation due under an award; and the deputy commissioner, Board, or court shall fix in the award approving the fee, such lien and manner of payment.
 
 
 [17]
 Counsel for respondents expended a total of sixty-two hours in pursuing this appeal: five hours in travel necessitated by oral argument, and the balance in research and preparation of written briefs and for oral argument. Of this time, counsel for respondents have allocated and identified 22 hours, 48 minutes, as being attributable to the claim of Gwendolyn Brown
 
 
 [18]
 Counsel for respondents have sought twenty-five dollars per hour for travel time expended, and fifty dollars per hour for time spent in research and preparation of written briefs and for oral argument
 
 
 [19]
 In this case's present posture, it appears that benefits are due and payable under 33 U.S.C. § 909(c) (1976), which provides in pertinent part: "If there be one surviving child of the deceased, but no widow or widower, then for the support of the child 50 per centum of the wages of the deceased . . . ." Accordingly, Gwendolyn Brown is entitled to recover one-half of Marion Trainer's average wage, one-half of $219.19 per week. This compensation appears to be payable from the date of Trainer's death until Brown completes her schooling, a period of approximately five years
 
 
 [20]
 The prevailing respondent Gwendolyn Brown included in her itemization an item of $125.00 for 5 hours travel costs at $25.00 per hour, pointing out that while this expense was incurred in traveling to the appellate hearing for oral argument in behalf of both respondents, the same expense would have been incurred if argument only on behalf of Gwendolyn Brown had been necessary. We think this expense incurred jointly in behalf of the two respondents should be halved. Our award of $1331.80 includes $62.50 for travel time
 
 
 [21]
 In itemizing attorney's fees and expenses, the respondent Gwendolyn Brown included an item of $59.01 for printing of briefs. This item and any other taxable costs should be submitted to the Clerk by each party by Bill of Costs for assessment under the provisions of Rule 39, Fed.R.App.P