THOMPSON *v.* LAWSON, DEPUTY COMMIS-
SIONER OF THE UNITED STATES BUREAU
OF EMPLOYEES COMPENSATION, ET AL.

No. 352. Argued March 9, 1954.—Decided April 5, 1954.

*David Carliner* argued the cause for petitioner. With
him on the brief was *Henry H. Glassie.*

*George W. Ericksen* argued the cause and filed a brief
for the Gulf Florida Terminal Co., Inc. et al., respondents.

*Lester S. Jayson* argued the cause for the Deputy Com-
missioner, respondent. With him on the brief were
*Robert L. Stern,* then Acting Solicitor General, *Assistant
Attorney General Burger* and *Samuel D. Slade.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

On June 15, 1951, Otis Thompson died from injuries suffered while loading a ship for his employer. Two women sought a death benefit under the Longshoremen's and Harbor Workers' Compensation Act, each claiming to be his "widow." The Deputy Commissioner denied both claims, that of one woman on the ground that she was not the lawful wife of the decedent, and that of the other because at the time of Otis' death she was living apart from him not "by reason of his desertion," 33 U. S. C. § 902 (16). On a review of the latter dismissal, the District Court sustained the Deputy Commissioner's order, and the Court of Appeals for the Fifth Circuit affirmed. 205 F. 2d 527. In doing so, that court rejected contrary decisions of the Courts of Appeals for the Second and Ninth Circuits, *Associated Operating Co.* v. *Lowe,* 138 F. 2d 916, *Moore Dry Dock Co.* v. *Pillsbury,* 169 F. 2d 988. We granted certiorari to resolve this conflict. 346 U. S. 921.

The Deputy Commissioner made these findings. Otis and Julia Thompson were married in 1921, and lived together as husband and wife until November 1925, when Otis deserted her. They never lived together again, and he never contributed anything to the support of Julia or their two children, nor did she ever endeavor to secure such support. Meanwhile Otis had taken up with one Sallie Williams, and they went through a marriage ceremony in 1929. Julia, in turn, found another mate, one Jimmy Fuller, whom she "married" in 1940. Thereafter she was known as Julia Fuller. She was formally divorced from Fuller in 1949. Shortly before Otis' death, he asked Julia to "take him back," but she refused, having no intention of ever again living with him and resuming the relationship of husband and wife.

The single, unentangled question before us is whether, on these unchallenged facts, Julia was at the time of Otis' death in 1951, his statutory "widow," as that term is described by Congress in the Longshoremen's Act: "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause. or by reason of his desertion at such time," 33 U. S. C. § 902 (16). We agree with the court below that since she was not at the time of her husband's death living apart from him "by reason of his desertion," she was not a "widow" within the scope of this provision.* Whatever may have been the situation prior to her "marriage" to Jimmy Fuller in 1940, it is clear that after that date she lived as the wife of Jimmy Fuller, held herself out as his wife, and had severed all meaningful relationship with the decedent.

We do not reach this conclusion by assessing the marital conduct of the parties. That is an inquiry which may be relevant to legal issues arising under State domestic relations law. Our concern is with the proper interpretation of the Federal Longshoremen's Act. Congress might have provided in that Act that a woman is entitled to compensation so long as she is still deemed to be the lawful wife of the decedent under State law, as, for example, where a foreign divorce obtained by her is without constitutional validity in the forum State. But Congress did not do so. It defined the requirements which every claimant for compensation must meet. Considering the purpose of this federal legislation and the manner in which Congress has expressed that purpose, the essential requirement is a conjugal nexus between the claimant

---

*It was not contended before us that in the circumstances of this case the phrase "for justifiable cause" has a different reach than the phrase "by reason of his desertion."

and the decedent subsisting at the time of the latter's death, which, for present purposes, means that she must continue to live as the deserted wife of the latter. That nexus is wholly absent here. Julia herself, by her purported remarriage, severed the bond which was the basis of her right to claim a death benefit as Otis' statutory dependent. The very practical considerations of this Compensation Act should not be subordinated to the empty abstraction that once a wife has been deserted, she always remains a deserted wife, no matter what— the no matter what in this case being the wife's conscious choice to terminate her prior conjugal relationship by embarking upon another permanent relationship.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MINTON concur, dissenting.

Petitioner's husband, a longshoreman, was killed in 1951 on a job governed by the Longshoremen's and Harbor Workers' Compensation Act. Petitioner was not then living with her husband and had not done so since he deserted her and their two children in 1925. Petitioner went through a marriage ceremony with another man in 1940 living with him as his wife until 1949 when they were divorced. Of course this marriage was invalid and petitioner remained the wife of her husband until he was killed. The Court now holds as a matter of law that petitioner's second "marriage" amounts to a forfeiture of her right to recover compensation under the Act as a widow. In so holding, the Court follows decisions of the Court of Appeals for the Fifth Circuit.[1] The Courts of Appeals for the Second and Ninth Circuits have held to

[1] *Ryan Stevedoring Co.* v. *Henderson,* 138 F. 2d 348; *American Mutual Liability Ins. Co.* v. *Henderson,* 141 F. 2d 813.

the contrary.[2] I agree with the Second and Ninth Circuits.

Not a word in the Compensation Act suggests that the deserted widow of a deceased longshoreman automatically forfeits all right to statutory compensation because she has lived with a man other than her husband. What the Act actually does is to entitle a widow to compensation if at the time of her husband's death she is either: (1) living with him; (2) dependent upon him for support; (3) living apart from him for justifiable cause; (4) living apart from him by reason of his desertion. Obviously these issues cannot be decided without hearing evidence and determining facts. The Act vests deputy commissioners, not courts, with power "to hear and determine all questions in respect of such claim." 33 U. S. C. § 919 (a). And their findings of fact when supported by substantial evidence are conclusive on courts.[3]

Here there were only two factual issues presented to the Deputy Commissioner. Was the wife living apart from her husband for "justifiable cause"? Was she living apart from him because of his "desertion"? I think there was evidence before the Deputy Commissioner on which he could have fairly decided these questions of fact either way. He made findings and entered an order against the petitioner, but it is admitted that he did so because he felt bound by prior holdings of the Fifth Circuit that an attempted marriage by a wife barred her recovery of compensation as a matter of law. The Court now affirms the judgment although the Deputy Commissioner has never passed on the factual issues of whether

---

[2] *Associated Operating Co.* v. *Lowe*, 138 F. 2d 916, affirming 52 F. Supp. 550; *Moore Dry Dock Co.* v. *Pillsbury*, 169 F. 2d 988.

[3] *Voehl* v. *Indemnity Ins. Co.*, 288 U. S. 162, 166; *Parker* v. *Motor Boat Sales, Inc.*, 314 U. S. 244, 246; *O'Leary* v. *Brown-Pacific-Maxon, Inc.*, 340 U. S. 504, 507–508.

the wife's living apart from her husband was either "justifiable" or by reason of his "desertion." That the Court treats its holding as one of statutory construction cannot obscure the actual effect of what it is doing. The Court is taking from the deputy commissioners their congressionally granted power to determine from all the facts and circumstances whether a widow is entitled to compensation.

I would reverse with directions to remand the cause to the Deputy Commissioner to determine, free from judicial compulsion, whether, as a fact, petitioner's living apart was for "justifiable cause" or on account of her husband's "desertion." If either of these issues should be decided in favor of the petitioner, she is entitled to compensation.