LIBERTY MUTUAL INSURANCE COM-
PANY and Morauer and Hartzell,
Inc., Corporations, Appellants,

v.

P. J. DONOVAN, Deputy Commissioner,
U. S. Employees' Compensation Com-
mission, and Mary Elizabeth Sligh, Ap-
pellees.

No. 12152.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1954.

Decided Jan. 20, 1955.

Mr. John P. Arness, Washington, D.
C., with whom Mr. Arthur J. Phelan,
Washington, D. C., was on the brief, for
appellants.

Mr. Ward E. Boote, Asst. Sol., United
States Dept. of Labor, with whom Mr.
Leo A. Rover, U. S. Atty., and Mr. Lewis
Carroll, Asst. U. S. Atty., were on the
brief, for appellee Donovan, and Mr.
John S. Chudzik, Washington, D. C., for
appellee Sligh.

Before PRETTYMAN and BAZE-
LON, Circuit Judges, and WALTER M.
BASTIAN, District Judge (sitting by
designation).

PRETTYMAN, Circuit Judge.

This proceeding concerns a claim for
an award under the Workmen's Com-
pensation Law for the District of Co-
lumbia,[1] which is the Longshoremen's
and Harbor Workers' Compensation
Act.[2] Appellee Sligh made a claim for
death benefits as the widow of a deceased
insured employee.[3] The Deputy Com-

1. D.C.Code §§ 36–501 and 36–502 (1951).

2. 44 Stat. 1424 (1927), as amended, 33
U.S.C.A. § 901 et seq.

3. Sec. 9(b) of the Act, 44 Stat. 1430
(1927), as amended, 33 U.S.C.A. § 909(b),

missioner, the other appellee here, granted the compensation. The Insurance Company and the deceased's former employer, Morauer and Hartzell, Inc., filed suit in the District Court. That court sustained the award, and the companies appealed.

The controversy revolves about the statutory definition of a "widow". Appellee Sligh says she is the widow; the appellants say she is not. The statute reads as follows:

"The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time." [4]

Appellee Sligh married the deceased employee in February, 1948. They had financial troubles, quarreled, and in September, 1949, he "just packed up and left." Thereafter he did not contribute to her support. In November, 1949, Mrs. Sligh met a Mr. Rose, began consorting with him, and in August, 1950, bore twins of which he was the father. She registered at the hospital as Mrs. Rose, and the twins were listed at the Bureau of Vital Statistics as the children of Mr. and Mrs. Rose. In early 1951 Rose rented an apartment for the mother and twins, maintained it, and supplied her with fifteen dollars a week thereafter. He slept there upon occasion. Mr. Sligh died in December, 1951. Within a week thereafter Mrs. Sligh and Rose established, and they have since maintained, a "common law wife relationship". In March, 1952, they moved into a house and thereafter lived there together.

The question is whether under the foregoing facts and statute appellee Sligh was Sligh's widow upon his death in December, 1951. There has been a conflict among the Courts of Appeals on the point. The Second [5] and Ninth [6] Circuits held to one view and the Fifth [7] to another. The Supreme Court took the problem and decided it in Thompson v. Lawson,[8] sustaining the view of the Fifth Circuit. That decision was rendered after the award in the present proceeding. Both the Deputy Commissioner and the District Court had followed the view held by the Second Circuit.

The Supreme Court in the Thompson case held that Congress might have provided for compensation to a woman so long as she is deemed to be the lawful wife of a deceased employee; that it did not do so but on the contrary made a statutory definition of its requirements. Concerning that definition the Court said:

" * * * the essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death, which, for present purposes, means that she must continue to live as the deserted wife of the latter." [9]

The Court went on to say:

"The very practical considerations of this Compensation Act should not be subordinated to the empty abstraction that once a wife has been deserted, she always remains a deserted wife, no matter what—the no matter what in this case being the wife's conscious choice to terminate her prior conjugal relationship by embarking upon another permanent relationship."

provides for death benefits to a surviving wife "during widowhood".

4. 44 Stat. 1425 (1927), 33 U.S.C.A. § 902 (16).

5. Associated Operating Co. v. Lowe, D.C. E.D.N.Y.1943, 52 F.Supp. 550, affirmed 1943, 138 F.2d 916.

6. Moore Dry Dock Co. v. Pillsbury, 1948, 169 F.2d 988.

7. Ryan Stevedoring Co. v. Henderson, 1943, 138 F.2d 348; American Mut. Liability Ins. Co. v. Henderson, 1944, 141 F.2d 813; Delta Stevedoring Co. v. Henderson, 1948, 168 F.2d 872.

8. 1954, 347 U.S. 334, 74 S.Ct. 555, 98 L. Ed. 733.

9. Id., 347 U.S. at pages 336–337, 74 S.Ct. at page 557.

■ Thus the rule is now settled that to be entitled to an award as a widow a woman must have continued to live as the deserted wife of an employee who has deserted her; there must be a bond in reality between husband and wife in their relation to one another. The essential ingredient in her claim is her real status, speaking factually, in respect to the deceased, not the existing legal formalities of the relationship. We read the opinion in the Thompson case to mean that the critical inquiry is the right on the part of the woman to compensation. Has the woman in reality a right to compensation on account of the death of the man? Her technical relationship to the deceased is not the criterion.

■ The doctrine of the Thompson case was not the basis upon which the present controversy was considered or decided. Indeed the Deputy Commissioner did not deem it necessary, in his careful narrative statement of the case, embodied in his order as "Findings of Fact", to mention the facts that prior to the death of Sligh appellee Sligh was known, in some circles at least, as Mrs. Rose and prior to Sligh's death she lived for months in an apartment rented by Rose, received regular weekly support from Rose, had twin children by Rose, and registered herself officially as Mrs. Rose. He made no finding upon whether Mrs. Sligh did or did not "[embark] upon another permanent relationship" prior to Sligh's death. It seems clear enough that the Deputy Commissioner considered the formal legal relationship sufficient to sustain the award. That view was erroneous.

It seems to us the proper disposition of the case is to remand it for reconsideration in the light of the opinion and decision of the Supreme Court in the Thompson case. The case will therefore be remanded to the District Court with instructions to remand to the District of Columbia Compensation District for reconsideration in accord with this opinion.

So ordered.