**GENERAL DYNAMICS CORPORATION, QUINCY SHIPBUILDING DIVISION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor and Edith S. Murphy, Respondents.**

No. 78–1128.

United States Court of Appeals, First Circuit.

Submitted Sept. 7, 1978.

Decided Nov. 7, 1978.

Norman P. Beane, Jr., and Murphy & Beane, Boston, Mass., on brief, for petitioner.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Gilbert T. Renaut, Atty. and Mark C. Walters, Atty., U. S. Dept. of Labor, Washington, D. C., on brief, for respondent, Director, Office of Workers' Compensation Programs.

David G. Hanrahan and Gilman, McLaughlin & Hanrahan, Boston, Mass., on brief, for respondent, Edith S. Murphy.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from an order of the Benefits Review Board (Board) of the United States Department of Labor affirming an Administrative Law Judge's (ALJ) award of death benefits on a claim under the Longshoremen's and Harbor Workers' Compensation Act (Act), as amended, 33 U.S.C. §§ 901 et seq. Jurisdiction for this appeal is conferred by 33 U.S.C. § 921(c).

The issue is whether claimant-respondent, Edith S. Murphy, is entitled to the benefits provided by the Act under section 909(b) as the "widow" of James V. Murphy, as that term is defined under section 902(16):

The term "widow or widower" includes only the decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time.

Edith and James Murphy were married on March 4, 1947, and, thereafter, took up residence in Quincy, Massachusetts, where they lived together for seven years. This relationship was abruptly terminated when Murphy decamped after being found in bed at their home with another woman by the respondent. During the period 1954–1957, a pattern emerged in which Murphy would periodically return to live at the Quincy home and then leave again. In 1956, a son, Kevin, was conceived and born to the couple. Six weeks after the boy's birth, Murphy left home again and never returned to live with his wife. During the following seventeen years, respondent did not see her husband often, although she usually heard from him around Christmas each year.

During the last ten years of that period, respondent received no support from .her husband, relying instead on employment and public assistance. Murphy was killed on December 27, 1974, in a work-related accident at petitioner's shipbuilding yard.

Respondent's status as the legal wife of the decedent is not contested. Petitioner contends, however, that the spouses were not living apart "by reason of his desertion." The term "desertion" is not defined in the Act and petitioner suggests that this court look to state domestic relations law to determine whether there was, in fact, a desertion at the time of decedent's death. Petitioner relies on *Gibson v. Hughes,* 192 F.Supp. 564 (S.D.N.Y.1961), and *Powell v. Rogers,* 496 F.2d 1248 (9th Cir. 1974), for its position that state law governs the situation. We note that both of those cases presented the question of whether claimant and decedent were legally married, a threshold issue not present in this case. There is no need to refer to state domestic relations law, since the issue here is respondent's eligibility for benefits under the Act and not the existence of grounds for divorce under state law. *Thompson v. Lawson,* 347 U.S. 334, 336, 74 S.Ct. 555, 98 L.Ed. 733 (1954).

> The application of state domestic relations law, developed in other contexts, to the solution of problems under workmen's compensation statutes, produces results which at best have only a fortuitous relation to the remedial purposes of the compensation acts, and often are in direct conflict with them. When the state law does provide a definition of marital status deliberately shaped to compensation act purposes alone, there is no reason why that definition should not be applied under the federal statute in preference to one drawn from the state's general domestic relations law.

*Albina Engine and Machine Works v. O'Leary,* 328 F.2d 877, 879 (9th Cir. 1964).

If we look to the state's workmen's compensation statute [1] and case law for guidance, we find that the complete cessation of the husband's visits to his home without the wife's consent could be found to be a desertion many years later. *Allen's Case,* 318 Mass. 640, 63 N.E.2d 356, 357 (1945).

In *Thompson v. Lawson, supra,* 347 U.S. 334, 74 S.Ct. 555, 557, the Supreme Court stated, in reference to the precise question of whether one was a "widow" for purposes of the Longshoremen's and Harbor Workers' Compensation Act:

> Considering the purpose of this federal legislation and the manner in which Congress has expressed that purpose, the essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death, which, for present purposes, means that she must continue to live as the deserted wife of the latter.

*Id.* at 336–337, 74 S.Ct. at 557. The question is whether the requisite "conjugal nexus" could be found to exist seventeen years after the decedent ceased to live with respondent.

 Our review of the Board's decision is limited to "errors of law, including the question of whether the Board adhered to the substantial evidence standard in its review of factual findings" by the ALJ. *Bath Iron Works Corp. v. White,* 584 F.2d 569 at 574 (1st Cir. 1978). *See also Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir. 1976). Moreover, the Board's decision supporting the ALJ's application of a broad statutory term or phrase to a specific set of facts will be upheld if a reasonable factual and legal basis for it exists. *Cardillo v. Liberty Mutual Co.,* 330 U.S. 469, 478–479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); *Bath Iron Works Corp., supra,* 584 F.2d at 574.

In his decision, the ALJ relied on the fact that respondent, after the original separa-

---

1. Mass.Gen.Laws Ann. ch. 152 § 32 provides:
 The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

 (a) A wife upon a husband with whom she lives at the time of his death, or from whom, at the time of his death, the department shall find the wife was living apart for justifiable cause or because he had deserted her.

tion, had continued to live at the same residence and received telephone and gas bills and filed income tax returns under her married name. The ALJ also relied on respondent's uncontradicted testimony that she never considered obtaining a divorce, had no marital or meretricious relations with other men, and had not sought support from her husband for fear that he would be arrested. The record, furthermore, supports a conclusion that respondent was willing to resume the marital relationship. Not only did she allow him to stay whenever he returned home during the early years of the separation, but also received his calls each year around Christmas, went out to dinner with him, and accepted visits from him on two occasions as recently as two years before his death.

Our review of the record leaves no doubt that the Board properly adhered to the substantial evidence standard in making its determination that respondent lived as the deserted wife of Murphy up to his death.

Petitioner maintains that the facts lend themselves to the inference that respondent consented to the separation and adopted a separate and independent life-style. Such an inference is far-fetched. Unlike the situation in *Thompson v. Lawson, supra,* there was no evidence here at all of any attempt or desire by the respondent to terminate the conjugal relationship. But even if such an inference were tenable, "that the facts permit diverse inferences is immaterial; if supported by the evidence, the inferences drawn by the administrative law judge are conclusive." *Bath Iron Works, supra,* at 573.

*The order is affirmed.*