Mary Jane LEETE, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

and

Petroleum Helicopters, Inc. and American Home Assurance Company, Respondents.

No. 85–4447.

United States Court of Appeals, Fifth Circuit.

May 23, 1986.

N. Elton Dry, Pravel, Gambrell, Hewitt & Kimball, Houston, Tex., for petitioner.

Ralph F. Meyer, Charles D. Kennedy, Houston, Tex., for Petroleum Helicopters and Am. Home Assur. Co.

Marianne Demetral Smith, Donald S. Shire, Assoc. Sol., U.S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Linda Meekins, Clerk, Benefits Review Bd., Washington, D.C., for other interested respondents.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Mary Jane Leete brings this petition for review of a decision of the Benefits Review Board denying Leete survivor's benefits under the Longshore and Harbor Workers' Compensation Act on the basis that Mary Jane Leete was not the statutory widow of the decedent-employee, Theodore E. Leete. For the following reasons, the petition for review is granted, the order of the Board reversed, and the cause remanded with instructions to enter an order in accordance with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In December of 1977, Theodore E. Leete (hereinafter "the decedent") was killed in a helicopter crash while employed by respondent Petroleum Helicopters, Inc. Mary Jane Leete and one Mary Christine Leete both sought death benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., claiming to be the widow of the decedent.[1] An administrative law judge ("ALJ") determined that neither woman was entitled to benefits. The ALJ denied Mary Christine Leete's claim on the ground that she was not the lawful wife of the decedent. Mary Jane Leete's claim was denied on the ground that she was not living apart from the decedent "by reason of his ... desertion...." 33 U.S.C. § 902(16). Only Mary Jane Leete appealed[2] the decision to the Benefits Review Board (hereinafter "the Board"), and the Board affirmed.

A brief history of the relationship between the decedent and Mary Jane Leete, and between the decedent and Mary Christine Leete, is pertinent to the resolution of this appeal. Mary Jane Leete, the legal wife of the decedent,[3] lived with the decedent in their home in Lafayette, Louisiana, from their marriage in 1971 until the decedent deserted Mary Jane Leete in October of 1975 to live with Mary Christine Hampton in Baton Rouge, Louisiana. Mary Jane Leete filed a petition for a legal separation in November or December of 1975, which she withdrew when she and the decedent reconciled in January of 1976. Sometime in March of 1976, the decedent again left Mary Jane Leete and moved to Fort Worth, Texas, to resume his relationship with Mary Christine Hampton.

In June of 1976, Mary Jane Leete filed a second petition for a formal separation. Mary Jane Leete and the decedent thereafter sold their home, splitting the proceeds as well as the remaining community estate. The petition for separation resulted in a decree of separation in September 1976. That same month, coincidentally, Mary Christine Hampton married a Mr. Lowery. The decedent returned to Lafayette spending many of his days off with Mary Jane

---

1. In addition, three children of the decedent (none by Mary Jane Leete or Mary Christine) filed for benefits.

2. Mary Christine Leete initially appealed the decision of the ALJ but voluntarily withdrew her appeal thereafter. Record Vol. 1 at 2.

3. No one contests that Mary Jane Leete was the legal wife of the decedent. She married the decedent in 1971, and they remained legally married until the decedent's death.

Leete. (The decedent worked seven days and was then off seven days). While in Lafayette, the decedent stayed in Mary Jane Leete's apartment and engaged in sexual relations with her.[4]

The decedent, however, resumed his affair with Mary Christine Hampton in March of 1977 after Mary Christine Hampton divorced Mr. Lowery. The decedent left Mary Jane Leete for the last time in May of 1977, and that same month the decedent purchased a home in Texas which he shared with Mary Christine Hampton up until his death.[5]

In June of 1977, Mary Jane Leete moved from Lafayette, Louisiana, to Houston, Texas, to take a job that had been offered to her. In December of 1976, prior to leaving Lafayette, Mary Jane Leete had met and had dinner with a Dwain Carder. She saw Carder in Lafayette perhaps two or three times thereafter. Carder, however, lived in Houston, and Mary Jane Leete saw more of him after she moved there, dating him once or twice a week at the most, and often less frequently. Mary Jane Leete admitted engaging in occasional sexual relations with Carder, perhaps "once or twice a month," from June of 1977 until after the death of the decedent. Both Carder and Mary Jane Leete testified that their relationship was not serious, and Carder continued to date other women.

Mary Jane Leete last heard from the decedent in November of 1977, when he called her from Galveston and made tentative plans to see her but did not in fact carry out those plans. Theodore E. Leete died a few weeks later. At the time of the decedent's death, no formal divorce had been entered; Mary Jane Leete, however, received from the decedent a formal peti-

tion for divorce in the mail two days after the decedent's death. The decedent listed Mary Jane Leete as the only beneficiary on the decedent's life insurance, company profit sharing plan, and other company benefit programs. In addition, Mary Jane Leete paid the majority of the decedent's funeral expenses.

## II. DISCUSSION

The Longshore and Harbor Workers' Compensation Act ("the Act") provides that compensation "known as a death benefit" is payable to "a widow...." 33 U.S.C. § 909. The Act further states that "[t]he term[ ] 'widow ...' includes only the decedent's wife ... living with or dependent for support upon him ... at the time of his ... death; or living apart for justifiable cause or by reason of his ... desertion at such time." 33 U.S.C. § 902(16). The sole issue in this appeal is whether Mary Jane Leete meets this definition of widow.

No one contests that Mary Jane Leete remained the legal wife of the decedent. Nevertheless, that status alone is not sufficient to establish entitlement to benefits under the Act because although "Congress might have provided in [the Act] that a woman is entitled to compensation so long as she is still deemed to be the lawful wife of the decedent ... Congress did not do so." Rather, Congress "defined the requirements which every claimant for compensation must meet." *Thompson v. Lawson*, 347 U.S. 334, 336, 74 S.Ct. 555, 556, 98 L.Ed. 733 (1954).

In the present case, Mary Jane Leete claims widow status solely on the basis that she was living apart from the decedent

---

4. The ALJ found no "single statement to relate that the deceased slept with [Mary Jane Leete] or committed a single act of cohabitation during any of these intermittent visitations." Record Vol. 1 at 132–33. This finding clearly is not supported by substantial evidence. Mary Jane Leete specifically stated that she and the decedent engaged in sexual relations during those visits. That testimony was unchallenged. Plaintiff Mary Christine Leete's Exhibit 3 at 68. *See also* Record Vol. 3 at 103, 104, 108–09 (Mary Jane Leete's testimony that the decedent stayed

with her overnight in her apartment or "spent the night."); Record Vol. 3 at 170 (corroborating testimony by Mary Jane Leete's son that decedent stayed the night "many times").

5. That fall, the decedent entered into a bigamous marriage with Mary Christine Hampton. On the basis of that ceremonial marriage, Mary Christine Leete also claimed widow status under the Act.

at the time of his death "by reason of his ... desertion at such time." 33 U.S.C. § 902(16). In determining whether a claimant is a deserted spouse for purposes of the statute, "the essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the [decedent's] death...." *Thompson,* 347 U.S. at 336–37, 74 S.Ct. at 557. Moreover, the Supreme Court also stated that the determination of whether a conjugal nexus exists is not to be reached by "assessing the marital conduct of the parties." 347 U.S. at 336, 74 S.Ct. at 556.

The ALJ in the instant case determined that Mary Jane Leete was not a deserted wife because she "was not living as the abandoned (deserted) wife of decedent, but had chosen to terminate that alleged status to embark upon another relationship." Record Vol. 1 at 137. The Board upheld that determination, holding that the ALJ's findings were supported by substantial evidence.[6] One member of the Board dissented contending that Mary Jane Leete established her status as a deserted wife as a matter of law.

This Court reverses the decision of the Board for two reasons, both of which are errors of law.[7] First, the Board and the ALJ improperly relied on conduct of Mary Jane Leete occurring more than four months to one year subsequent to the decedent's death. Second, considering only that evidence which is relevant to the determination of the conjugal nexus, Mary Jane Leete qualifies as a deserted wife under existing Supreme Court and Fifth Circuit precedent as a matter of law.

First, the ALJ relied on certain events occurring after the death of the decedent in determining that the conjugal nexus between Mary Jane Leete and the

decedent had been severed. In the spring of 1978, months after the death of the decedent, Mary Jane Leete and Dwain Carder each contributed approximately one-half of the down payment needed to purchase a house in Houston. Mary Jane Leete occupied that house and she paid Carder $400.00 per month rent. Both Mary Jane Leete and Carder testified that Carder entered into the transaction for investment purposes. In the end of 1978, approximately one year after decedent's death, Mary Jane Leete and Carder began to live together in that house. This arrangement lasted about five months until Carder moved out. Thereafter, Carder and Mary Jane Leete sold the house and Carder and Mary Jane Leete divided the proceeds. Subsequently, Mary Jane Leete returned to Lafayette, where she presently lives. The ALJ clearly relied on these postdeath events to conclude that the conjugal nexus between Mary Jane Leete and the decedent had been severed. Record Vol. 1 at 136.

Mary Jane Leete petitioned the ALJ to reconsider his order denying her benefits on the grounds that he had considered conduct occurring after the death of the decedent. The ALJ denied that request. Record Vol. I at 118. Leete raised the identical point to the Board. The Board held that Leete's subsequent conduct was relevant to determining the strength of the relationship between the decedent and Mary Jane Leete at the time of the decedent's death.

Although this Court concludes that some postdeath conduct, nearer the time of death than the facts in this case, might be relevant to assessing the strength of the conjugal nexus between a petitioner and a decedent, the postdeath events in the instant case are clearly not relevant. The evidence

---

6. The Act provides that the Board may reverse only those factual findings of the ALJ which are not supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3).

7. In reviewing an order of the Benefits Review Board, this Court is limited to considering errors of law as well as to making certain that the

Board adhered to its statutory standard of review of factual determinations, which is whether the findings of fact are supported by substantial evidence and consistent with the law. *Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141 (5th Cir.1984); *New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1037 (5th Cir. 1981).

is undisputed that Carder and Leete did not begin to cohabit until almost one year after decedent's death. This Court is hard pressed to understand how such conduct has any bearing on whether Mary Jane Leete was the deserted wife of the decedent *at the time of decedent's death,* the only relevant point in time under the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 902(16); *Thompson,* 347 U.S. at 337, 74 S.Ct. at 557.

Second, considering only the relevant evidence, the evidence demonstrates that under existing Supreme Court and Fifth Circuit precedent Mary Jane Leete falls within the definition of a widow as a matter of law. The present case turns on whether Leete's relationship with Carder prior to the death of the decedent severed the conjugal nexus between Leete and the decedent. We begin with the admonishment of the Supreme Court that we are not to assess the marital conduct of the parties. Thus, this Court has held that "[t]he fact that [the petitioner] found other fleeting but impermanent domestic attachments did not prevent [the petitioner] from meeting the requirement of the Act which, as construed by the Supreme Court, is 'that she must continue to live as the deserted wife of the (decedent).'" *Port Arthur Shipping Corp. v. Calbeck,* 287 F.2d 26, 27 (5th Cir.1961) (quoting *Thompson,* 347 U.S. at 337, 74 S.Ct. at 557).

In *Thompson,* the Supreme Court indicated that the spouse must make a "conscious choice to terminate her prior conjugal relationship ...," 347 U.S. at 337, 74 S.Ct. at 557, which was accomplished in that case by "embarking upon another permanent relationship." *Id.* There, the woman claiming widow status had entered into a bigamous marriage with another man, other than the decedent, and had refused the decedent's request to reconcile.

In contrast, in *Matthews v. Walter,* 512 F.2d 941 (D.C.Cir.1975), the court held that the conjugal nexus had not been severed under the following facts. There, the

claimant had separated from the decedent in 1954 and remained separated until the decedent's death in 1970. During that time, the claimant established an ongoing relationship with another man and even bore the second man's child. Nevertheless, even though the claimant had established, for all practical purposes, a permanent relationship with a second man, the court found a conjugal nexus between the claimant and the decedent because the claimant had continued to see the decedent over the entire sixteen year period, the claimant and decedent regularly engaged in sexual relations, the claimant consistently referred to herself as "Mrs. Valentine," and finally, the claimant cared for the decedent during his final days. Consequently, the *Matthews* court refused to hold that the establishment of a permanent relationship with another person other than the decedent necessarily constituted an "absolute bar to compensation...." 512 F.2d at 945 & n. 8.

 As is apparent from the *Thompson, Matthews,* and *Port Arthur* cases, the proper focus is on the relationship between the claimant and the decedent and not on any extramarital affairs of the claimant unless such an affair demonstrates a conscious decision to sever the conjugal nexus. In the present case, Mary Jane Leete accepted the decedent back each and every time he sought a reconciliation. Even two weeks prior to the decedent's death, Mary Jane Leete agreed to see him. The parties had not divorced and Mary Jane testified, uncontradicted in the record, that she did not desire a divorce. She knew nothing of the decedent's desire for one until two days after his death. Mary Jane Leete testified that she prosecuted a petition for a legal separation to a conclusion in order to "protect herself" and to obtain alimony. Even after the entry of the separation order, Mary Jane Leete reestablished a relationship with the decedent for a period of almost eight months before the decedent left her again.[8] Contrary to the determination

---

**8.** This Court holds that it is immaterial whether the relationship between Mary Jane Leete and

the decedent, from September 1976 until March 1977, constituted a formal reconciliation under

of the Board, Leete's relationship with Carder, fleeting and impermanent as it was, did not represent a conscious decision to sever the conjugal nexus.[9]

### III. CONCLUSION

In short, Leete was the deserted wife of the decedent at the time of the decedent's death, and as such, she is entitled to compensation benefits under the Act. The decision of the Board is reversed, and the cause remanded to the Board for entry of an order in accordance with this opinion.

REVERSED AND REMANDED.

Louisiana law for the purposes of reestablishing the marital estate, because the question of whether a claimant is a deserted spouse under the Act is a question of federal rather than state law.

**9.** *Liberty Mutual Insurance Co. v. Donovan,* 218 F.2d 860 (D.C.Cir.1955), is not contrary to this holding. In that case, the court remanded the cause to the Board to consider whether the conjugal nexus had been severed. There, the claimant was deserted by the decedent in 1949.

Three months later the claimant established a relationship with another man, bore twins by him, held herself out as his wife and lived in an apartment rented for her by him. Within a week of the decedent's death, the claimant and the other man established a "common law marriage." Such conduct clearly could demonstrate a factual basis for a finding that the claimant made a conscious decision to sever the conjugal nexus.