**NEW VALLEY CORPORATION,**
**Petitioner,**

v.

**Doretha GILLIAM, Widow of Leonard**
**Gilliam, Respondent.**

**and**

**Director, Office of Workers' Compensation Programs, U.S. Department of Labor.**

**No. 98–1369.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 7, 1999.

Decided Oct. 12, 1999.

---

Michael D. Dobbs argued the cause and was on the brief for petitioner New Valley Corporation.

Judy L. Woodall argued the cause and was on the brief for respondent Doretha Gilliam. Janet R. Dunlop, Counsel, U.S. Department of Labor, entered an appearance.

Before: WALD, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In 1970, Leonard Gilliam injured his back when he slipped and fell while delivering a candygram for his employer, Western Union Telegraph Company, now known as Petitioner New Valley Corporation. As a result, he suffered a permanent and total disability, for which he received workers' compensation until his death in 1995. New Valley challenges the award of death benefits to his surviving wife, arguing that she does not meet the statutory definition of "widow" because, following his desertion of her and their ten children, she rebuffed his attempts to return to the marital home. Finding this argument meritless, we deny the petition for review.

## I.

This case turns on the definition of "widow" in the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.* (1982). Section 902(16) of the LHWCA defines "widow or widower" as "only the decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time." 33 U.S.C. § 902(16). The LHWCA was made applicable to the District of Columbia by the 1928 District of Columbia Workers' Compensation Act, former D.C.Code §§ 36–501 *et seq.* (repealed 1979). Though now repealed, the 1928 D.C. Act and the federal LHWCA still govern claims arising from injuries that occurred before July 26, 1982. *See Evans Financial Corp. v. Director, Office of Workers' Compensation Programs,* 161 F.3d 30, 32 n. 1 (D.C.Cir.1998).

The Supreme Court first addressed the LHWCA's definition of widow in *Thompson v. Lawson,* 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733 (1954), holding that legal marriage alone is insufficient to confer eligibility for survivor benefits. Instead of "assessing the marital conduct of the parties" under state domestic relations law, courts must examine the facts of the relationship to determine if there "is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death." *Id.* at 336, 74 S.Ct. 555. *Thompson* affirmed the denial of benefits to the claimant because, although legally married to the decedent at the time of his death, she had made a "conscious choice to terminate her prior conjugal relationship by embarking on another permanent relationship." *Id.* at 337, 74 S.Ct. 555. The claimant's conduct, the Court said, "severed the bond which was the basis of her right to claim a death benefit as [decedent's] statutory dependent." *Id.* Reasoning that "[t]he very practical considerations of this Compensation Act should not be subordinated to the empty abstraction

that once a wife has been deserted, she always remains a deserted wife, no matter what," the Court concluded that a conjugal nexus between the decedent and his surviving spouse is a necessary prerequisite to an award of death benefits under the Act.

Shortly after *Thompson,* this court, in *Liberty Mutual Insurance Co. v. Donovan,* 218 F.2d 860 (D.C.Cir.1955), explained the conjugal nexus test as follows:

> [T]he rule is now settled that to be entitled to an award as a widow a woman must have continued to live as the deserted wife of an employee who has deserted her; there must be a bond in reality between husband and wife in their relation to one another. The essential ingredient in her claim is her real status, speaking factually, in respect to the deceased, not the existing legal formalities of the relationship.

*Id.* at 862.

With this legal framework in mind, we turn to the marriage between Leonard and Doretha Gilliam. The parties do not dispute that at the time of her husband's death, Mrs. Gilliam was legally married to him but neither living with him nor financially dependent upon him. Under the Act's definition of widow, her eligibility for benefits therefore turns on whether their estrangement at the time of her husband's death was "for justifiable cause" or "by reason of his ... desertion." 33 U.S.C. § 902(16).

Following an evidentiary hearing, the Administrative Law Judge made the following findings of fact, which the parties do not dispute. Wed on October 31, 1949, the Gilliams remained legally married until the husband's death some 46 years later. The couple had ten children. They lived in Washington, D.C.

The ALJ found that shortly after Mr. Gilliam became permanently disabled as a result of his 1970 work-related injury, he chose to leave the marital home. Mrs. Gilliam remained in the marital home, where she has resided ever since. Mr. Gilliam provided no support for his wife and their ten children despite her attempts to collect child support through court proceedings. In 1977, Mr. Gilliam was awarded permanent total disability compensation plus moving expenses. He moved to California but returned to Washington some four years later.

Attempting to return to the marital home, Mr. Gilliam contacted his wife for the first time in nearly a decade, repeatedly saying "he wanted his home back." Never indicating that he wanted to continue the marriage, Mr. Gilliam intended to reclaim property, not to reconcile the relationship. Because she considered him a controlling husband and feared him "to some extent," Mrs. Gilliam refused to allow him to return. She twice tried to divorce him. She discontinued the first divorce proceeding at his request and lacked the financial resources to complete the second. In the years leading up to her husband's death, Mrs. Gilliam sometimes cooked meals for him, and the couple continued to see each other socially on family occasions. She never entered into another relationship.

Finding that at the time her husband died Mrs. Gilliam was living apart from him "for justifiable cause" (the statute's requirement) and that she had not severed the "conjugal nexus" (*Thompson*'s requirement), the ALJ awarded her death benefits of roughly $300 a month. New Valley appealed to the Department of Labor's Benefits Review Board, which affirmed the ALJ's decision. In this petition for review, the company challenges the ALJ's findings of a conjugal nexus and justifiable cause for separation as contrary to law.

II.

▮ We "may reverse a [Benefits Review] Board ruling only for errors of law or when the Board has exceeded the scope of its authority in its review of the ALJ." *Brown v. I.T.T./Continental Baking Co.,* 921 F.2d 289, 292 (D.C.Cir.1990). The

ALJ's findings of fact "shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Highly deferential to the factfinder, this substantial evidence test requires only that the ALJ's findings be supported by "more than a 'scintilla,' but less than a preponderance of the evidence." *Evans Financial,* 161 F.3d at 34. In conducting our review, we must take account of the statute's presumption in favor of claimants: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of this chapter...." 33 U.S.C. § 920(a). Demonstrating the Act's "beneficent purposes and humanitarian nature," this presumption requires that we "resolve doubtful questions ... in favor of the claimants," *Burns v. Director, Office of Workers' Compensation Programs,* 41 F.3d 1555, 1562 (D.C.Cir.1994) (internal quotation marks omitted), and "construe the Act liberally" to "avoid[ ] harsh and incongruous results." *Stevenson v. Linens of the Week,* 688 F.2d 93, 98 (D.C.Cir.1982).

■ New Valley, seeking to avoid this "limited and highly deferential" substantial evidence standard, *Cadbury Beverages Inc. v. NLRB,* 160 F.3d 24, 29 (D.C.Cir. 1998) (internal quotation marks omitted), and conceding that it has no quarrel with the ALJ's fact-finding, attempts to frame its petition in terms of legal issues. It begins by challenging the ALJ's conjugal nexus finding, claiming that as in *Thompson* the conjugal nexus between the Gilliams had been severed. The company points out that Mrs. Gilliam repeatedly rebuffed her husband's attempts to return to the marital home, twice began divorce proceedings, "had no further conjugal relations with her husband" despite his return to the Washington area, and "did not intend to resume the marital relationship." All of this, according to New Valley, leads to the inescapable conclusion that Mrs.

Gilliam, like the claimant in *Thompson,* "made a conscious decision to sever the conjugal nexus with her husband and she persisted in her intentions up to the time of Mr. Gilliam's death."

The ALJ reached a different conclusion, finding that under all of the circumstances of this case the couple's conjugal nexus had not been terminated: "The Act does not require Mrs. Gilliam to condone or forgive the years of desertion and nonsupport she endured. Nor must she cohabit with her husband when he decides to return years later." Not only does nothing in *Thompson* require a different result—unlike the claimant there, Mrs. Gilliam never entered into another relationship—but the ALJ's conclusion is perfectly consistent with *Matthews v. Walter,* 512 F.2d 941 (D.C.Cir.1975), which upheld a benefits award to a surviving widow despite her failure to resume living with the decedent once the cause of their initial separation ceased. As we explained, "[t]his comports with human realities and avoids working undue hardships upon individuals by forcing either the forfeiture of benefits or the abandonment of a life style to which they had become accustomed following the justified separation." *Id.* at 944.

New Valley urges us to adopt a new legal standard for conjugal nexus. It argues that a deserted wife can preserve her right to benefits only by taking her husband back whenever he decides to return. According to the company, Mrs. Gilliam terminated their conjugal nexus by refusing to allow her husband to return home even though he had left her with ten children, had given them no support, wished to return only to reclaim his property, and was "a controlling husband" feared by his wife. We find nothing in the statute or cases to require such a Dickensian result. Indeed, the company's position conflicts with the Act's "beneficent" and "humane" purposes.

■ Despite New Valley's repeated attempts in its brief and at oral argument to

frame its argument as a legal issue, it cannot escape the basic proposition that conjugal nexus is a question of fact and that in this case the ALJ's decision finds ample support in the record. The ALJ found that Mrs. Gilliam remained in the marital home for more than 35 years; that she neither entered into another relationship nor changed her married name; and that she maintained a relationship with her husband through their children, spent holidays with him, and occasionally even cooked meals for him. The ALJ also found Mrs. Gilliam's initiation of divorce proceedings insufficient to break the conjugal nexus because she . abandoned the first attempt at her husband's behest and never completed the second due to a lack of financial resources. We find nothing in either fact or law to question the ALJ's ultimate conclusion that the conjugal nexus between the couple still existed at the time of Mr. Gilliam's death.

■ New Valley next alleges that the ALJ ignored the relevant time period fixed by the Act for ascertaining the existence of "justifiable cause." According to the company, the husband's desertion of his family in the early seventies cannot possibly constitute justifiable cause for Mrs. Gilliam to be living apart from him at the time of his death almost twenty-five years later. If desertion by itself automatically constitutes justifiable cause, the company argues, the statute would not treat desertion and justifiable cause separately, nor would courts bother to consider the conduct of the parties following the desertion to determine if a conjugal nexus remained at the time of death.

■ No one disagrees with the proposition that the statute fixes the decedent's death as the proper time for inquiring into the reasons for a couple's separation. *See Matthews*, 512 F.2d at 944. Nor does anyone disagree that desertion does not always amount to justifiable cause for a couple to be living apart, perhaps years later, at the time of the decedent's death. *See Thompson*, 347 U.S. at 337, 74 S.Ct.

555. It does not follow, however, that desertion alone could *never* constitute justifiable cause. We know this because the Supreme Court has described the LHWCA's definition of "widow" as including a claimant living apart from her spouse "because of desertion *or other* justifiable cause." *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs*, 519 U.S. 248, 257, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997) (emphasis added).

In this case, however, the ALJ did not rely solely on the husband's desertion. Instead he found that the desertion, "*coupled with* Decedent's non-support for the ten children *and* his controlling behavior, constitutes justifiable cause for living apart." (Emphasis added.) In other words, the husband's post-desertion behavior contributed to the ALJ's conclusion that there was justifiable cause for the couple's continued separation. Moreover, nothing in the ALJ's decision suggests that his justifiable cause conclusion rested on circumstances other than those existing at the time of the husband's death.

New Valley challenges the ALJ's justifiable cause finding on a second ground. "Controlling behavior," New Valley claims, cannot be equated with alcoholism, adultery, severe mental problems, or physical abuse—the conditions supporting justifiable cause findings in several cases cited by the company. Courts of Appeals and the Benefits Review Board, however, have affirmed findings of justifiable cause on less serious grounds, including grounds less severe than the husband's behavior here. *See, e.g., Henderson v. Avondale Marine Ways, Inc.*, 204 F.2d 178 (5th Cir. 1953) (finding justifiable cause where mother-in-law objected to claimant and cut up her clothes); *Kennedy v. Container Stevedoring Co.*, 23 BRBS 33 (1989) (rejecting the notion that justifiable cause is limited to temporary separations or situations in which a spouse is fearful of an infectious disease or bodily injury, and finding justifiable cause where claimant and decedent agreed to separate because

they could not live together amicably); *Denton v. Northrop Corp.,* 21 BRBS 37 (1988) (finding justifiable cause where couple lived apart because of job requirements).

■ Notwithstanding these decisions, New Valley insists that in this circuit serious misconduct rising to the level of a "matrimonial offense" is needed to sustain a finding of justifiable cause. In support, New Valley cites *Matthews* for the proposition that Congress fashioned the justifiable cause provision based on the law of divorce and separation and that the phrase is therefore "substantially equivalent to a 'matrimonial offense.'" New Valley seriously misreads *Matthews.* The "matrimonial offense" language in *Matthews* came from an earlier case, *Weeks v. Behrend,* 135 F.2d 258 (D.C.Cir.1943). Explicitly rejecting *Weeks'* "narrow construction of 'justifiable cause,'" *Matthews* instead looked to "a broader and more straightforward interpretation" found in other cases. *Matthews,* 512 F.2d at 944. *Matthews* explained:

> We read *Thompson* as undermining the narrow construction of "justifiable cause" offered in *Weeks.* The Court stated in *Thompson* that it would not assess "the marital conduct of the parties. That is an inquiry which may be relevant to legal issues arising under State domestic relations law. Our concern is with the proper interpretation of the Federal Longshoremen's Act."

*Id.* (citation omitted).

■ In a last-ditch effort to unearth a legal issue in this case, New Valley urged for the first time at oral argument that in addition to "conjugal nexus" and "justifiable cause," LHWCA death benefits turn on whether the surviving spouse had a reasonable expectation of support from the decedent. Even were we to consider arguments not raised in the briefs, we would reject this one. Nothing in either the statute or case law supports a "reasonable expectation" test. Indeed, under questioning at oral argument, counsel conceded that there could be situations in which a widow, although lacking any expectation of support, might nonetheless be entitled to death benefits.

### III.

■ In the end, the ALJ's justifiable cause and conjugal nexus findings are factual determinations reviewable only pursuant to the highly deferential substantial evidence standard. Even where "the facts permit the drawing of diverse inferences," the finder of fact "alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359, 361–62, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965) (quoting *Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 478, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)). New Valley does not argue that the ALJ's findings were unsupported by the record, only that we should reinterpret the evidence to support the opposite conclusion. But as we have said many times, "[a]n agency's conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Secretary of Labor, Mine Safety and Health Admin. v. Federal Mine Safety and Health Review Comm'n,* 111 F.3d 913, 918 (D.C.Cir.1997) (internal quotation marks omitted). Finding ample support for the ALJ's determination that Mrs. Gilliam qualifies as a widow under the LHWCA, we deny the petition.

*So ordered.*